STATE of Arkansas *v.* Edward SPENCER

CR 94-1055                          892 S.W.2d 484

Supreme Court of Arkansas
Opinion delivered February 13, 1995

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellant.

No response.

TOM GLAZE, Justice. The state brings this interlocutory appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(12) and A.R.Cr.P. Rules 16.2(a)(3) and 36.10(a) and (c). In doing so, the state's sole contention is that the trial court erred in granting Edward Spencer's pretrial motion to suppress the statement he gave to Officer Steve Wallace on April 22, 1993. About one week after Spencer gave his statement, the state charged Spencer with having committed the felony offense of carnal abuse in the first degree as defined under Ark. Code Ann. § 5-14-104 (1993).

In deciding the correctness of the trial court's pretrial suppression decision, we first review the evidence that was before it. The trial court's ruling was made after a hearing on Spencer's motion. Officer Wallace was the only witness, and testified as follows:

> I contacted Mr. Spencer on the phone and advised who I was, what I was investigating. Told Mr. Spencer I would need to get with him and talk to him. He would not be under arrest and he had no obligation to come in but I would like to talk to him. He agreed to do so. At that time he came in and on that date and time was real cooperative. I advised him he was not under arrest, we would just talk. We talked about the case and his involvement. Mr. Spencer was honest to the extent with me we wrote out a statement of things he told me. We agreed that it was correct and he signed the statement. I advised Mr. Spencer I would have

to get with the prosecutor on the case for any possible charges and would get back to him at a later date. With that I left. There did not appear to be a problem with his mental faculties. No problems with drugs or alcohol. I did not advise him of his rights.

I explained he did not have to come in and talk with me but I would like it if he would. He was not under arrest. He agreed. At the Sheriff's office he was advised he was not under arrest so he would not be under any pressure and he again understood that and spoke to me. Had he told me he did not want to come in and see me, that would have ended it.

On cross-examination, Wallace further stated the following:

Scan workers requested a statement from the victim. At the time I requested Mr. Spencer come in and talk to me I had talked with Anita Hammons. I could not say I had a report on a referral report from Scan. I knew what had taken place one way or the other for the interview. Ms. Hammons had given me some details of the interview with the alleged victim. I did not have any other suspect in this case. It is true Ms. Hammons had told me that the alleged victim had stated to her that her grandfather had improperly touched her.

I could not say without talking to the prosecutor if I had enough to seek a warrant. I had not talked to the prosecutor before talking to Mr. Spencer.

\* \* \*

I did not inform Mr. Spencer that what he said to me could be used against him. Not at all. I simply told him he was not under arrest. I told him he had the right to leave. I had advised him it was to be turned over to the prosecutor after we talked and did the statement I told him I would get with the prosecutor and it would be up to him at which time I would get back to him.

Upon conclusion of Wallace's testimony, the trial judge suppressed Spencer's statement, finding that Officer Wallace knew Spencer had been "identified" and that no other suspect was under

investigation. Under those circumstances, the judge ruled Spencer should have been advised of his rights. We hold the trial court was in error.

■ The trial court erred in its misconception that *Miranda* warnings are required whenever the state's investigation focused on Spencer as a suspect notwithstanding a complete absence of the compulsive aspect of custodial investigation. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest." *Berkemer* v. *McCarty*, 468 U.S. 420, 440 (1984), citing *California* v. *Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam). Stated another way, the Supreme Court defined custodial interrogation as meaning the questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of action in any significant way. *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1965); *see also Stansbury* v. *California*, 114 S.Ct. 1526 (U.S. 1994) (per curiam); and *Oregon* v. *Mathiason*, 429 U.S. 492 (1977) (per curiam). The Supreme Court further explicitly recognized that *Miranda* warnings are not required simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Beheler*, 463 U.S. at 1125. In resolving the question of whether a suspect was "in custody" at a particular time, the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation. The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being interrogated. *Stansbury*, 114 S.Ct. at 1529.

The facts and setting in *Mathiason* are similar to those before us now and illustrate the Supreme Court's application of the foregoing controlling principles when determining if a custodial interrogation occurred. There, a police officer investigating a burglary was given Carl Mathiason's name as an only suspect. Mathiason agreed to meet the officer at the state patrol office. The officer informed Mathiason that he was not under arrest and then the two of them went into a closed room. The officer told Mathiason that he wanted to talk to him about a burglary and Mathiason's truthfulness would possibly be considered by the district

attorney or judge. The officer advised that the police believed Mathiason was involved in the burglary and [falsely stated that] Mathiason's fingerprints were found at the scene. Mathiason sat for a few minutes and then conceded he had taken the property. This interview between the officer and Mathiason occurred within five minutes after Mathiason had come to the office.

All evidence in *Mathiason* resulted from the officer's testimony since he was the only witness. In reviewing that testimony, the *Mathiason* court found there was no indication that the questioning took place in a context where Mathiason's freedom to depart was restricted in any way. The court related that Mathiason came voluntarily to the police station, where he was immediately informed that he was not under arrest, and it further pointed out that after the one-half hour interview ended, Mathiason left the police station without hindrance. The Court then concluded that, based on the facts, Mathiason was not in custody or otherwise deprived of his freedom of action in any significant way. The court summarized its holding as follows:

> Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of an formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Oregon* v. *Mathiason*, 429 U.S. at 495.

Like in *Mathiason*, the record before us in the present case fails to reflect the suspect's freedom of action had been restrained

to such a degree as that associated with a formal arrest. Officer Wallace told Spencer that he would like to talk with him, but that Spencer was not under arrest and he had no obligation to talk to Wallace. Wallace stated that if Spencer had said that he would not come in, that would have ended it. However, Spencer went to the police station on his own volition. Upon Spencer's arrival, Wallace again informed Spencer that he was not under arrest, and told him he had a right to leave. Afterwards, the two men talked, which led to Spencer giving a statement. Wallace advised Spencer that he would turn Spencer's statement over to the prosecutor and it would be up to him (the prosecutor) at which time he would get back to him (Spencer). The interview ended, and the two men departed. Spencer was not arrested until eight days later.

Based upon the announced legal principles and testimony set out above, we conclude that the interview conducted as described hereinabove would not cause a reasonable person in Spencer's position to think his freedom of action was limited so as to lead him to believe he was in custody. Therefore, we reverse and remand this cause for proceedings consistent with this opinion.