STATE of Arkansas *v.* John Edward JOHNSON

CR 96-359 934 S.W.2d 499

Supreme Court of Arkansas
Opinion delivered November 25, 1996

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Sr. Appellate Advocate for appellant.

*Jack R. Kearney*, for appellee.

BRADLEY D. JESSON, Chief Justice. This is an interlocutory appeal brought by the State, pursuant to Ark. R. Crim. P. 3(a)(2). The State contends that the trial court erred in granting the appellee's motion to suppress his confession. We agree and reverse and remand.

On August 30, 1995, John Edward Johnson was charged with one count of rape, two counts of aggravated robbery, and two counts of theft of property. The charges were brought in connection with the June 25, 1995 robbery of the Purple Cow restaurant in Little Rock. The incident was the fourth in a string of robberies which had occurred at the Purple Cow. During the course of the June 25 incident, an employee of the restaurant allegedly was raped. On July 7, 1995, Johnson confessed to police that he had committed the June 25 robbery. According to Johnson's statement, he went to the restaurant near closing time. While wearing a ski mask over his face and armed with a shotgun, he confronted an employee in the parking lot. He forced the employee back into the restaurant, demanded the night's receipts, and told a female employee to undress. He then exited the building. It is this statement which Johnson moved to suppress. He claimed that the statement was obtained through coercion and that he was denied the ability to obtain counsel of his own choosing. The trial judge agreed that Johnson had been denied his right to choice of counsel, even though a public defender consulted with Johnson before he gave the statement and remained with Johnson while the statement was given.

At a hearing on the motion to suppress, the following evidence was adduced. Johnson, a former employee of the Purple Cow, first became a suspect on or about June 30, 1995. At the request of Little Rock Police Detective Todd Armstrong, Johnson came to the police station on the 30th and was questioned regarding the incident. He denied any knowledge of the robbery. The authorities took no action based on the interview, and Johnson was free to go. Apparently, though, he developed into a suspect shortly thereafter. On July 5, 1995, Detective Armstrong, along with Detective Charles Ray, visited Johnson's home to serve a court order requesting Johnson to appear on July 7 and provide blood, hair, and urine samples for chemical testing. When Johnson did not show up at the appointed time, a warrant was issued for his arrest for contempt of court. He was arrested and brought to the police station on the afternoon of July 7. Shortly thereafter, he made the confession that is the subject of this case.

Prior to giving his statement, Johnson was advised of his *Miranda* rights. He signed a form containing those rights and also signed a rights-waiver form. At some point either during or just after signing the rights waiver, Johnson told Detective Armstrong that, before he gave a statement, he would like to talk with an attorney. Armstrong testified at the hearing that he responded to the request as follows:

> I asked him did he have one in mind? I could give him a phone book if he didn't. He didn't have an attorney in mind. I proceeded to contact the public defender's offices so they could send somebody down to represent him.

Armstrong also testified that Johnson did not object to his calling the public defender, nor did Johnson say that he wanted another attorney.

Attorney Tammy Harris from the public defender's office was summoned by page, and she arrived at the police station shortly thereafter. She went over the rights form with Johnson and advised him not to give a statement. Johnson indicated he wanted to go ahead and make a statement. During the course of their conversation, Johnson also indicated to Ms. Harris that his family was going to try and hire a private attorney. Ms. Harris did not relay this information to the police. Shortly thereafter, with Ms. Harris present, Johnson gave his confession. It was tape recorded by the police.

The transcript of the tape reflects that, at the beginning of the statement, Johnson was again advised of his *Miranda* rights. Ms. Harris then said the following to him:

> Mr. Johnson, I told you of your right number one, you have the right to remain silent. I've advised you to exercise that right but you want to go ahead and give a statement to Detective Armstrong. Is that right?
>
> [Johnson answers]: Yes.

The trial judge ruled that, under these circumstances, Johnson was denied his constitutional right to counsel. The State appeals from that ruling.

In this case we address, for the first time, whether an accused has a right to have an attorney of his own choosing present during an in-custody interrogation. The answer to that question is important not only in the sense that it involves the precious safeguards set forth in *Miranda* v. *Arizona*, 384 U.S. 436 (1966), but in the sense that it has far-reaching implications in the administration of criminal law as applied by police officers, prosecutors, and public defenders. Our review of this case is required for the correct and uniform administration of criminal law. Ark. R. App. Crim. 3(c). We therefore have jurisdiction of this appeal brought by the State. See generally *State* v. *Spencer*, 319 Ark. 454, 892 S.W.2d 484 (1995) (determining under what circumstances an officer is required to give *Miranda* warnings to the subject of his interrogation).

The "right to counsel" we speak of in this case is the right established by the United States Supreme Court in the landmark *Miranda* decision. The Court in *Miranda* was concerned with the environment of the interrogation process and designed a system of procedural safeguards to protect a citizen's Fifth Amendment privilege against self-incrimination. Among those safeguards was the right to the presence of an attorney. The Court was particularly bothered by the "compelling atmosphere" of in-custody interrogation. Critical to the Court's thinking was the idea that, in the absence of certain protective devices, interrogations conducted "incommunicado" or in "privacy" or "secrecy" run the risk of an accused incriminating himself without full awareness of his all-important Fifth Amendment rights.

Against this backdrop, we conclude that John Edward

Johnson was not deprived of his right to counsel, as contemplated by *Miranda*. He consulted with an attorney prior to giving a statement. The attorney was present during the statement. There is no allegation that counsel was ineffective or acted contrary to Johnson's interests. In fact, she advised him not to give a statement. The fact that counsel, at the interrogation stage of the process, may not have been Johnson's choice, is of no consequence. See *Seattle* v. *Sandholm*, 65 Wash. App. 747, 829 P.2d 1133 (1992). What is of consequence is that the evils which *Miranda* sought to protect against were not present here. Johnson's statement was not given in a secret or isolated atmosphere, nor was he kept in ignorance about his rights. He had been fully advised of his *Miranda* rights, he invoked his right to counsel, he consulted with an attorney, and he had the attorney present during questioning. His right to counsel, as envisioned by the Supreme Court in *Miranda*, was protected.

Reversed and remanded.

NEWBERN, J., not participating.

DUDLEY and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Justice. I do not agree that the circumstances of this case sufficiently implicate the correct and uniform administration of the criminal law so as to invoke the jurisdiction of this court pursuant to Ark. R. App. P. Crim. 3. I would dismiss the appeal.

Ark. R. App. P. Crim. 3(a) requires the State to certify that an appeal is not taken for the purposes of delay and that the trial court's order substantially prejudices the prosecution of the case. However, the State may not appeal simply because it believes that the trial court made an erroneous ruling. The rule further requires the attorney general to inspect the record and certify that the correct and uniform administration of the criminal law requires review by this court. Ark. R. App. P. Crim. 3(c).

I agree with Johnson's contention that the trial court's ruling involved a question of fact or at least a mixed question of law and fact, and is therefore not appropriate for an interlocutory appeal. For example, determining whether the statute of limitations on a particular felony has run does not involve the correct and uniform administration of criminal law, and is therefore not appropriate for an interlocutory appeal. *See State* v. *Mazur*, 312 Ark. 121, 847

S.W.2d 715 (1993). Likewise, pure issues of statutory application, rather than interpretation, do not involve the correct and uniform administration of the criminal law. *See State* v. *Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995) ("As a matter of practice under [Ark. R. App. P. Crim. 3], we only take appeals that are narrow in scope and involve the interpretation of the law.")

In *State* v. *Harris*, 315 Ark. 595, 868 S.W.2d 488 (1994), this court also considered whether it had jurisdiction to consider the State's interlocutory appeal from the grant of a motion to suppress a confession. At issue was a statement made to a fraud investigator at the Department of Human Services, and whether the trial court correctly concluded that the investigator was a "law enforcement officer" as contemplated by Ark. R. Crim. P. 2.3, requiring that he advise the defendant that she had no obligation to come to his office to make the statement.

In *Harris*, we construed Ark. R. Crim. P. 36.10 (currently codified at Ark. R. App. P. Crim. 3), and determined that the trial court acted within its discretion after making an evidentiary decision. The trial court's ruling turned on the facts of the case to such an extent that the "correct and uniform administration of the law" was not at issue. This court further stated that:

> In short, an interpretation of the Criminal Rules with *widespread ramifications* is simply not at issue in this case. . . [w]here the trial court acts within its discretion after making an evidentiary decision based on the facts on hand or even a mixed question of law and fact, this court will not accept an appeal under Ark. R. Crim. P. 36.10 [currently codified at Ark. R. App. P. Crim. 3].

*Id.* (emphasis added) (quoting *State* v. *Mazur*, 312 Ark. 121, 847 S.W.2d 715 (1993)). Accordingly, we concluded that we did not have jurisdiction to hear the interlocutory appeal and dismissed it.

The present case is essentially indistinguishable from *Harris*. In ordering Johnson's statement to be suppressed, the trial court determined that the police, as a matter of law, violated Johnson's constitutional rights in two respects: the police should have allowed Johnson to make a telephone call as soon as he requested an attorney, and should not have been empowered to effectively "choose" an attorney for Johnson. However, in so doing, the trial court necessarily considered certain evidentiary matters: whether Johnson

was under arrest, whether Johnson requested a private attorney, whether he was allowed to make a phone call, whether the public defender was representing Johnson at the time of the statement, whether the police "chose" an attorney for Johnson, and other circumstances attendant with the taking of Johnson's statement, both before and after Johnson invoked his right to consult with an attorney. The trial court's ruling thus turned on the facts of the case to a great extent and his decision was, at the least, based on a mixed question of law and fact.

As to the merits, the majority frames the issue to be addressed in this appeal as whether an accused has a right to have an attorney of his own choosing present during an in-custody interrogation. In this case, Johnson was a suspect at the time of his interrogation. Although he was under arrest for contempt of court in connection with his failure to show up for the taking of blood and other samples, he had not yet been charged with the crime. Thus, only his Fifth Amendment right against self-incrimination was implicated in this case, and his Sixth Amendment right to counsel had not yet attached. *See Davis* v. *United States*, 114 S. Ct. 2350 (1994); *Milholland* v. *State*, 319 Ark. 604, 893 S.W.2d 327 (1995); *McClendon* v. *State*, 295 Ark. 303, 748 S.W.2d 641 (1988).

In *Miranda* v. *Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that police must explain this right to him before questioning begins. As stated by the Court in *Michigan* v. *Tucker*, 417 U.S. 433 (1974), the right to counsel established in *Miranda* was one of a "series of recommended 'procedural safeguards'. . . [that] were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected."

Here, the public defender did not occupy an attorney-client relationship with Johnson when she advised him, nor, as a suspect, was he entitled to appointment of counsel. Rather, as the United States Supreme Court stated in *Michigan* v. *Tucker*, *supra*, the Fifth Amendment right to counsel is a procedural safeguard intended to insure that the right against compulsory self-incrimination is protected. The rule is designed to prevent police from badgering a defendant into waiving previously asserted *Miranda* rights. *See Minnick* v. *Mississippi*, 498 U.S. 146 (1990). I agree with the majority

that under the particular circumstances of this case, the preponderance of the evidence adduced at the suppression hearing tends to show that the public defender fulfilled the function of protecting Johnson against compulsory self-incrimination. However, she was paged to return to the police station because she had been there earlier in the day pursuant to the policy of the police department to have a public defender present when physical samples are to be taken from a suspect.

Neither the taking of the samples from Johnson nor this stated "policy" of the police is at issue in this appeal. There is no suggestion that the Little Rock police department, or indeed any other police department in the state, has a policy of solicitously procuring counsel for suspects who invoke their Fifth Amendment rights during custodial interrogation. Instead, my review of numerous criminal appeal transcripts would suggest quite a contrary policy.

There are surely no "widespread ramifications" for the correct and uniform administration of justice present in this appeal, and it should be dismissed.

I respectfully dissent.

DUDLEY, J., joins in this dissent.