
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–15–802

| | | |
|---|---|---|
| KEVIN FAIRL CAIN | APPELLANT | **Opinion Delivered:** September 14, 2016 |
| V. | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CR–2014-1737-6] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE MARK LINDSAY, JUDGE |
| | | AFFIRMED |

## RITA W. GRUBER, Judge

Kevin Fairl Cain was charged in the Circuit Court of Washington County with negligent homicide the day after a truck crashed, burned, and resulted in a fatality. The circuit court denied Cain's motion to suppress statements he made at the scene to Corporal Jason Davis of the Arkansas State Police, in which Cain admitted that he was the driver and had recently consumed alcohol and prescription drugs. Cain was convicted in a jury trial and was sentenced as a habitual offender to forty years' imprisonment in the Arkansas Department of Correction. He now appeals, contending that the denial of his motion to suppress was error and arguing that his statements were inadmissible because they were custodial and he had not been advised of his *Miranda* rights. We affirm.

We will reverse a circuit court's ruling on a motion to suppress only when it is clearly erroneous. *Collins v. State*, 2014 Ark. App. 574, at 4, 446 S.W.3d 199, 203. Custodial

SLIP OPINION

interrogation has been defined as the questioning initiated by law enforcement officers after a person is taken into custody or otherwise deprived of action in any significant way. *State v. Spencer*, 319 Ark. 454, 457, 892 S.W.2d 484, 485 (1995) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1965)). A person is "in custody" for purposes of *Miranda* warnings when he or she is "deprived of his freedom by formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Hall v. State*, 361 Ark. 379, 389, 206 S.W.3d 830, 837 (2005) (citing *Wofford v. State*, 330 Ark. 8, 28, 952 S.W.2d 646, 656 (1997)). The *Miranda* safeguards become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest. *Spencer*, 319 Ark. at 457, 892 S.W.2d at 485 (citing *Berkemer v. McCarty*, 468 U.S. 420 (1984)).

At the suppression hearing, Corporal Davis testified to events that occurred on the evening of August 27, 2014. He received a call about a burning vehicle, drove to the rural crash scene, and arrived around midnight—about an hour after the crash had occurred. Cain was standing on the roadside with sheriff's deputies and paramedics who were administering medical treatment to him. He had a large laceration on his face. First responders told Davis that Cain had wandered away—"down the road a little"—but had returned on his own to the scene of the crash. Davis turned his attention to Cain after learning that a crash victim, Danielle Bishop, was deceased.

Davis further testified that investigating the crash was his responsibility and that sheriff's deputies simply kept traffic away and secured the area. Davis stated, "I questioned [Cain] and he admitted he was the driver of the vehicle. I also asked him if he had consumed any alcohol

2

and he said he had a few beers." Davis testified that he did not arrest Cain, that Cain was not handcuffed or placed in the patrol car, that "because he was part of a traffic crash . . . he had to stay to give information on the crash," and that he was "detained" while Davis was asking questions and trying to identify the driver. No one from law enforcement accompanied Cain when the decision was made to transport him by ambulance to a hospital, where his blood sample was taken shortly after arrival. Davis testified that a reason for taking the sample, besides there being a requirement to test the blood or urine of a person involved in a fatal accident, was that Davis suspected intoxication. Cain spent the night in the hospital. The next day, after being medically released from the hospital, he was arrested at Davis's request.

Cain and the State repeat on appeal the arguments they made below, where Cain contended that his statements should have been suppressed because he made them while in custody without being Mirandized. He argued that this was not a routine traffic stop, that leaving the scene of a personal-injury accident is a felony, that knowledge of the law is presumed, and that—for Fifth Amendment and *Miranda* purposes—a reasonable person in his shoes would not have believed he was free to leave. Citing *Berkemer v. McCarty*, 468 U.S. 420 (1981), the State responded that this was an investigation rather than an in-custody interrogation and that the statements were admissible. In *Berkemer*, where a motorist was detained after a traffic stop but not arrested, his statements in answer to roadside questioning without *Miranda* warnings were admissible. Here, the circuit court rejected Cain's argument

SLIP OPINION

that he was presumed to know the law because he cited no authority to support his position,[1] and it found that his statements were admissible under *Berkemer.*

The only relevant inquiry to determine whether a suspect was in custody at a particular time is how a reasonable man in the suspect's shoes would have understood his situation. *Hall v. State*, 361 Ark. 379, 389, 206 S.W.3d 830, 837 (2005). Whether a suspect is in custody is "an objective inquiry." *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011) (citations and quotations omitted). The initial determination of custody depends on objective circumstances of the interrogation, not subjective views harbored by the interrogating officers or the person being interrogated. *Hall*, 361 Ark. at 389, 206 S.W.3d at 837. A *Miranda* warning is required only when a suspect is subject to custodial interrogation. *E.g.*, *Hall*, 361 Ark. at 388, 206 S.W.3d at 836. For purposes of *Miranda*, a suspect is in custody when there is "a formal arrest or restraint on freedom of movement of the degree associated with formal arrest[,]" such that a reasonable person would not have felt free to leave. *J.D.B.*, 564 U.S. at 270. To determine whether freedom of movement has been restrained so as to amount to custody, all of the circumstances must be examined—including the location and duration of questioning, the presence or absence of physical restraints during questioning, the statements made, and the release of the person when the questioning ends. *E.g.*, *Howes v. Fields*, 565 U.S. ____, 132 S. Ct. 1181, 1189 (2012).

"Custody," for purposes of *Miranda*, "is a term of art that specifies circumstances that

---

[1] *See Owens v. State*, 354 Ark. 644, 665, 128 S.W.3d 445, 458 (2003) (noting that "every person is presumed to know the law").

SLIP OPINION

are thought generally to present a serious danger of coercion." *Howes*, 132 S. Ct. at 1189; *see also, e.g.*, *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010) (stating that *Miranda*'s measures were adopted out of concern for "incommunicado interrogation in an unfamiliar, police-dominated atmosphere") (citation and internal quotations omitted). "Determining whether an individual's freedom of movement was curtailed . . . is simply the first step in the analysis"; an additional question is "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes*, 132 S. Ct. at 1190. Here, although Cain was required to remain at the crash scene, *see* Ark. Code Ann. § 27-53-101(b)(1) (Repl. 2010) (making it a felony for a driver to leave the scene of an accident in which a personal injury or death has occurred), such compulsion is not akin to the restraint of a formal arrest. *See, e.g.*, *Berkemer*, 468 U.S. at 435–40 (holding that a motorist detained for a routine traffic stop was not in custody even though it was a crime to drive away without permission); *see also, e.g.*, *In re A.N.C.*, 750 S.E.2d 835, 839–40 (N.C. 2013) (holding that a statutory requirement to remain on the scene was not equivalent to formal arrest for purposes of *Miranda*).

We agree with the State that Cain was not entitled to a *Miranda* warning before the investigating officer asked him if he was the driver at the time of the crash and if he had previously consumed alcohol or other intoxicants. He was questioned in the initial investigation of a fatal traffic accident while standing on the roadside, with other people in public view. He was not restrained or detained, was asked a minimal number of questions, and was allowed to leave afterward. He was not questioned in an environment presenting the

inherently coercive, incommunicado pressures of station-house questioning; nor was he in custody for purposes of *Miranda* merely because of his legal obligation to stay at the scene.[2]

Cain's statements were not custodial, and *Miranda* warnings were not necessary. We hold that the trial court did not clearly err by denying his motion to suppress.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Greg Klebanoff*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

---

[2]*See, e.g., Tobias v. State*, 735 S.E.2d 113, 118–19 (Ga. 2012) (finding that appellant was not isolated in a police-dominated atmosphere although legally obligated to remain at the scene to provide the investigating officer with details of a vehicular collision involving fatality: she was questioned, with her mother and aunt present, in a nearby residence after medical personnel escorted her and administered medical treatment).