Cite as 2024 Ark. App. 503

# ARKANSAS COURT OF APPEALS
## DIVISION I
No. CR-23-610

| | |
|---|---|
| | Opinion Delivered October 23, 2024 |
| COURTNEY FAYE ANSELMI<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FCR-21-905] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE R. GUNNER DELAY, JUDGE |
| | AFFIRMED |

**BART F. VIRDEN, Judge**

A Sebastian County jury convicted appellant Courtney Faye Anselmi of permitting the abuse of a minor and sentenced her to five years' imprisonment. On appeal, Anselmi does not challenge the sufficiency of the evidence supporting her conviction;[1] rather, she argues that the trial court erred in denying her motion to suppress incriminating statements

---

[1]A person commits the offense of permitting the abuse of a minor if, being a parent, she recklessly fails to take action to prevent the abuse. Ark. Code Ann. § 5-27-221(a) (Repl. 2013). The offense is a Class B felony if the abuse consisted of sexual intercourse. Ark. Code Ann. § 5-27-221(c)(1)(A). At trial, the State introduced Michael McGill's guilty plea to the charge of rape. Anselmi's daughter, MC, who was then thirteen years old, testified that McGill, Anselmi's long-term, live-in boyfriend, had been abusing her since she was about nine years old. MC told Anselmi about the abuse but testified that McGill continued to touch her "about four" more times after that initial disclosure. In 2020, while the family was living in Fort Smith, MC told Anselmi a second time what McGill was doing to her, which led to the sequence of events described in this opinion.

in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Specifically, she contends that her interview at the Hamilton Child Advocacy Center (CAC) was a custodial interrogation and that her statements were presumptively involuntary. We find no error in the denial of her motion to suppress and affirm her conviction.

I. *Background*

Anselmi was charged on November 2, 2021, with permitting the abuse of a minor. On April 1, 2023, she moved to suppress certain statements she made at the CAC while being interviewed by Detective Charity Abbott with the Fort Smith Police Department and Michelle Warth, an investigator with the Crimes Against Children Division (CACD) of the Arkansas State Police.

At the suppression hearing, Detective Abbott said that she received an email from Warth on October 26, 2021, after MC's school contacted the CACD's hotline about suspected child abuse. Detective Abbott said that the school had reported that the "father" was the alleged offender and that school officials were concerned because they could not reach MC's mother when they called the home.[2] Detective Abbott said that she and Warth picked up MC and her older sibling from school and took them to the CAC for an interview. Detective Abbott then contacted Anselmi to let her know that her children were safe and asked her to come to the CAC and to bring MC's younger sibling, who was not in school, for an interview.

---

[2]McGill is not MC's biological father, and Anselmi was not married to McGill.

Detective Abbott explained that the CAC is a "family friendly" environment and that it is not a place for interviewing suspects—it is for victims, their parents, and witnesses. She said that suspects are to be interviewed at the police department and are not even allowed at the facility. Detective Abbott testified that the facility is locked from the inside to protect the families "in case like, you know, offenders find out what is going on and they come up there, they don't want them dusting up in there with the family." She said that a person must be "buzzed" to enter the facility.

Detective Abbott testified that Anselmi was very upset and confused when she arrived at the CAC and that she was taken to a staff lunchroom to discuss the allegations. She said that she did not tell Anselmi that she could not leave the lunchroom but that she had walked with her outside to smoke because Anselmi was uncomfortable with the idea that McGill, who had driven her to the CAC, might see her from the parking lot. Detective Abbott said that she took Anselmi out a side door of the facility out of view of the front parking lot. She further testified that there were times when both she and Warth left Anselmi in the lunchroom but that the CAC staff were "constantly there seeing if people need drinks and snacks." Detective Abbott said that Anselmi was free to leave the facility.

Detective Abbott testified that she told Anselmi that MC was "holding back" and seemed scared to tell the truth about the allegations of abuse. She stated that Anselmi then said she had also questioned MC, who had told her that she "wanted it" and that it was her (MC's) idea. Detective Abbott said that Anselmi also said, however, that she did not believe MC. Detective Abbott testified that she understood that "kids can make up stories . . . to try

3

to get out of [trouble]." She said that Anselmi then told them that she had asked McGill about MC's allegations of abuse, so Detective Abbott asked for McGill's reaction to her question. She said that Anselmi told them the following: that McGill had told her that the abuse did happen, but there was no penetration and that he had done it for MC's "own good" because if he had not done it to her, somebody else would have, and that person would have either hurt or killed MC. Detective Abbott said that, because she was aware that the family had moved around but had lived in Fort Smith for the past year, she began to be concerned whether an offense had occurred in her jurisdiction, so she simply asked Anselmi *when* McGill had told her these things, and Anselmi said that "it was an ongoing story for years." Detective Abbott said that this was when she developed Anselmi as a suspect for permitting the abuse of a minor.[3] Later, she arrested Anselmi at the CAC.

Anselmi testified that she thought she could not leave the CAC because she was being questioned. She said that she did not feel free to leave while in the lunchroom and that everyone was being escorted throughout the facility. Anselmi testified that she was, in fact, told by Detective Abbott not to leave the room unaccompanied and that, when she asked to go outside to smoke, she was told by Detective Abbott that she would walk with her in a few minutes. Anselmi testified at trial, however, that she had asked Detective Abbott to take her

---

[3]During the recording, which was played for the jury at trial, Anselmi asked, "Am I going to be in trouble because I have known?" Warth replied, "Well, that I don't know. Right now[,] I am more concerned about the sexual abuse, okay. That's my–that's our main goal right now is sexual abuse, okay." Warth made clear at trial that her job with the CACD entailed investigating allegations of child maltreatment, making findings, and determining whether allegations are either true or unsubstantiated.

outside to smoke. Anselmi conceded that she had not tried to leave the facility and that she was not handcuffed at the CAC until she was placed under arrest.

The trial court stated from the bench that, considering the objective criteria, there was no custodial interrogation and that *Miranda* warnings were therefore not required. The trial court denied Anselmi's motion to suppress her incriminating statements.

## II. *Standard of Review*

When we review the denial of a suppression motion, we make an independent examination of the evidence based on the totality of the circumstances. *Mayo v. State*, 2020 Ark. App. 527. We review the trial court's findings of fact for clear error, and the ultimate question of whether a confession was voluntary is subject to an independent, or de novo, determination by this court. *Barnett v. State*, 2009 Ark. App. 153. We will not reverse the trial court's decision unless it is clearly against the preponderance of the evidence. *Id.*

## III. *Discussion*

In arguing that she was in custody, Anselmi points to the fact that the facility was locked and that she was told she could not leave the room without an escort—even to smoke. She notes that her interview and interactions with law enforcement officers were recorded. Also, her children were located elsewhere in the building, which "further bolster[ed] the Appellant's objective belief" that she was not free to leave.

*Miranda* warnings are required only in a custodial-interrogation situation. *Hall v. State*, 361 Ark. 379, 206 S.W.3d 830 (2005). A person is "in custody" for purposes of *Miranda* warnings when he or she is "deprived of his freedom by formal arrest or restraint on freedom

5

of movement of the degree associated with a formal arrest." *Id.* at 389, 206 S.W.3d at 837. To determine whether freedom of movement has been restrained so as to amount to custody, all of the circumstances must be examined—including the location and duration of questioning, the presence or absence of physical restraints during questioning, the statements made, and the release of the person when the questioning ends. *Cain v. State*, 2016 Ark. App. 398, 500 S.W.3d 786. Whether a suspect is in custody is an objective inquiry. *Reeves v. State*, 258 Ark. 788, 528 S.W.2d 924 (1975). In resolving the question of whether a suspect was in custody at a particular time, the only relevant inquiry is how a reasonable person in the suspect's shoes would have understood his or her situation. *Hall*, *supra*. The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being interrogated. *Id.*

Anselmi was asked to come to the CAC and to bring MC's younger sibling for an interview, and she was brought there by McGill. While Detective Abbott was a law enforcement officer, Warth was not. The information they had received from MC's school pointed to McGill as the offender, not Anselmi. The CAC is a "family friendly" environment for victims and is locked *from the inside* to keep out offenders or suspects. Anselmi was taken to a staff lunchroom to talk about the allegations made by MC. Detective Abbott was asked at trial about the fact that she recorded only portions of her conversations with Anselmi, and she conceded that that would not be good practice with a suspect. In other words, recording Anselmi in the manner that she did was an indication that she did not consider Anselmi to

6

be a suspect when Anselmi came to the CAC to speak about MC's allegations against McGill. Finally, Anselmi testified that *everyone* was escorted through the facility and that she had asked to be taken outside to smoke outside of the view of McGill.

Anselmi cites *Reeves, supra,* for the proposition that one can be in custody in his own home, so it did not matter that she was not in a police department or a sheriff's office. In *Reeves,* the supreme court held that the appellant's statements should have been suppressed because *Miranda* warnings were required given that the officers' investigation had become a custodial interrogation when they would not let Reeves out of their sight, and they would not get out of his home when Reeves ordered them to leave. Here, however, Detective Abbott testified that both she and Warth had left Anselmi alone in the staff lunchroom at times and that there was nothing to stop Anselmi from leaving the staff lunchroom and walking out of the CAC.

In *Stansbury v. California,* 511 U.S. 318 (1994), the United States Supreme Court held that an officer's subjective *and undisclosed* view concerning whether the person being interrogated is a suspect is irrelevant to the assessment of whether that person is in custody for *Miranda* purposes. Although Detective Abbott developed Anselmi as a suspect for permitting the abuse of a minor after Anselmi told her that she had known for years what McGill was doing to MC, Detective Abbott did not communicate that to Anselmi, so Anselmi would not have felt that she was not free to leave the CAC.

While Anselmi may have held a *subjective* belief that she could not leave the CAC, our review of the record convinces us that the trial court's ruling is not clearly against the

preponderance of the evidence. Looking at the situation objectively, a reasonable person in Anselmi's position would not have felt that he or she was in custody and not free to leave the CAC–if only to wait in the CAC's parking lot for his or her children to finish their interviews. Although Anselmi raises other arguments on appeal, they are premised on her assertion that she was in custody, and we hold that she was not in custody for purposes of *Miranda*.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Jeremy D. Wann*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.