STATE of Arkansas  *v.* Terry Lynn GUTHRIE

CR 99-1472                                          19 S.W.3d 10

Supreme Court of Arkansas
Opinion delivered June 15, 2000

*Tom J. Keith*, Judge;

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen. and *Michael C. Angel*, Asst. Att'y Gen., for appellant.

*Marshall N. Carlisle*, for appellee.

DONALD L. CORBIN, Justice. This is an interlocutory appeal brought by the State, pursuant to Ark. R. Crim. P.

3(a)(1). For reversal, the State argues that the trial court's order was clearly against the preponderance of the evidence because there was probable cause to support the traffic stop of Appellee Terry Lynn Guthrie. As it is required to do pursuant to Rule 3(c), the Attorney General maintains that the correct and uniform administration of the criminal law requires our review of the trial court's suppression order. We disagree.

The record reflects that on February 21, 1999, at approximately 3:16 a.m., Gentry Police Officer David Bates witnessed Guthrie pulling out of the driveway at Jackie's Beauty Shop onto Highway 12. Officer Bates continued down Highway 12 until he reached the Gentry city limits and then turned around. He initially indicated that there was no reason for him to be suspicious when he first noticed Guthrie attempting to pull out of the driveway. Upon redirect, however, Officer Bates testified that he suspected Guthrie may have been an impaired driver because of the way he attempted to pull out of the driveway at the beauty shop.

After Officer Bates turned around, he came into contact with Guthrie a second time. He stated that while following Guthrie along the highway, he noticed Guthrie cross the center line. Officer Bates initially stated that Guthrie was approximately one foot over the center line. Upon examination by the court, however, the officer admitted that he was unsure of exactly how far Guthrie had traveled over the center line. He also admitted that such information was not recorded in his incident report.

Officer Bates also testified that Guthrie was traveling approximately seventeen or eighteen miles per hour in a thirty-five mile per hour speed zone. He decided to pull Guthrie over after witnessing at least one of the vehicle's driver's side tires leave the pavement when the driver made a right turn. Officer Bates testified that he turned on his lights after Guthrie made the right-hand turn onto Little Street. Officer Bates stated that he did not know who he was pulling over, but later admitted that once Guthrie got out of his vehicle, he recognized him and knew him to be a convicted felon. Officer Bates testified that Guthrie immediately got out of his vehicle and began acting nervous. Officer Bates called for backup and Officer Joe Savage was dispatched to the scene of the stop.

Officer Bates asked Guthrie if he had any weapons in his vehicle, and Guthrie admitted to having a gun in his truck. While Officer Savage retrieved the gun, Officer Bates placed Guthrie under arrest. Officer Bates then conducted a pat-down search of Guthrie and discovered a black bag containing methamphetamine and empty baggies. Thereafter, Officer Savage, who is a trained canine handler, walked his canine around the exterior of Guthrie's vehicle. The canine alerted on the outside passenger door. Officer Savage discovered a briefcase in the backseat of the vehicle that contained additional methamphetamine, twenty-one grams of marijuana, drug paraphernalia, and $3,322.52 in cash. The police also discovered an organizer and a spiral notebook containing names with dollar amounts beside them.

Guthrie's testimony contradicted Officer Bates's account of the stop and search. Guthrie claimed that the officer did not turn his lights on or approach him until after he had already turned into his driveway, exited his vehicle, and begun to open his gate. Guthrie testified that Officer Bates told him that he had gone left of center and seemed to be driving slow. Guthrie told the officer that he had been driving slow because he thought he had a flat tire. Officer Bates asked Guthrie for his vehicle registration, and Guthrie began to look in the truck for it. According to Guthrie, Officer Bates asked him to get out of the vehicle and then the officer began pulling Guthrie toward his squad car. Guthrie also claimed that the officer began going through his pockets at this time. Guthrie denied ever giving the police permission to retrieve the gun from his vehicle or to search the vehicle

Guthrie's stepdaughter Miranda McCarver testified that she was watching television when she saw headlights through a window. Believing it to be her stepfather, Miranda stated that she looked out the window and saw Guthrie start to open the gate, at which time a police car pulled up. According to Miranda's testimony, the police car's lights were not on when the car first pulled up. Miranda also testified that she saw the officer pull at her stepfather and search his pockets.

Guthrie was charged with two counts of possession of a controlled substance with intent to deliver, possession of drug paraphernalia, and felon in possession of a firearm. Guthrie filed a pretrial motion seeking to suppress the contraband seized from his

vehicle. After conducting the foregoing suppression hearing, the trial court determined that there were not reasonable grounds to support the stop of Guthrie and thus granted Guthrie's motion to suppress. Further proceedings in this matter have been stayed, pending the outcome of this appeal.

As an initial issue, this court must determine whether the State has properly brought this interlocutory appeal under Ark. R. App. P.—Crim. 3. *See State v. Donahue*, 334 Ark. 429, 978 S.W.2d 748 (1998). There is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. The former is a matter of right, whereas the latter is not derived from the Constitution, nor is it a matter of right, but is granted pursuant to Rule 3. *See Bowden v. State*, 326 Ark. 266, 931 S.W.2d 104 (1996).

This court recently outlined the limited instances in which the State may bring such appeals:

> We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. Rule 3(c). As a matter of practice, this court has only taken appeals "which are narrow in scope and involve the interpretation of law." *State v. Banks*, 322 Ark. 344, 345, 909 S.W.2d 634, 635 (1995). Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *State v. Harris*, 315 Ark. 595, 868 S.W.2d 488 (1994). Appeals are not allowed merely to demonstrate the fact that the trial court erred. *State v. Spear and Boyce*, 123 Ark. 449, 185 S.W. 788 (1916).

*State v. Stephenson*, 330 Ark. 594, 595, 955 S.W.2d 518, 519 (1997). Thus, where the resolution of the issue on appeal turns on the facts unique to that case, it cannot be said that the appeal is one requiring interpretation of our criminal rules with widespread ramifications. *See State v. Gray*, 330 Ark. 364, 955 S.W.2d 502, *supplemental opinion on denial of reh'g*, 330 Ark. 368-A, 958 S.W.2d 302 (1997); *State v. Harris*, 315 Ark. 595, 868 S.W.2d 488 (1994). An appeal that raises the issue of application, not interpretation, of a statutory provision does not involve the correct and uniform administration of the criminal law. *State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995). Furthermore, this court will not accept an appeal by the State

where the trial court has acted within its discretion after making an evidentiary decision based on the particular facts of the case or even a mixed question of law and fact. *Id.*

■ Here, the State does not assert that the trial court incorrectly interpreted the law or that the outcome of this appeal will set important precedent. In the conclusion of its brief, the State argues that the court's ruling was clearly erroneous because the court misapplied a rule of criminal procedure and constitutional law. In other words, the State is arguing that based on the facts and circumstances of this case, the trial court did not correctly apply the law. Such an argument is not a basis for an appeal by the State under Rule 3(c).

The dissent suggests that this court should consider the merits of the State's appeal based solely on the "striking similarities" between the present matter and *State v. Sullivan*, 340 Ark. 315, 11 S.W.3d 526, *supplemental opinion on denial of reh'g*, 340 Ark. 318-A (2000). The only similarity between the two cases, however, is the fact that both were interlocutory appeals brought by the State challenging the trial courts' orders suppressing evidence. The similarities end there. *Sullivan* involved a review of the trial court's ruling regarding the legality of both a stop and a search. In deciding to suppress the evidence, the trial court made a specific finding that the stop was valid but that the subsequent arrest and vehicle search were not. *Sullivan* involved a specific Fourth Amendment issue, namely pretextual arrest, and our review of that case was necessary to ensure the correct and uniform administration of the criminal law. Indeed, the trial court concluded that the officer's decision to physically arrest Sullivan, rather than issue traffic citations, was based on the officer's recognition of Sullivan as someone involved in narcotics.

■ Here, the trial court simply found that there were no reasonable grounds to support the stop of Guthrie. The trial court made absolutely no findings regarding the arrest and search of Guthrie's vehicle. Nothing in the trial court's ruling implicated any specific Fourth Amendment issues; rather its ruling amounts to nothing more than a run-of-the-mill probable-cause determination. Resolution of the issue in this appeal does not require our interpretation of the criminal rules. *See Gray*, 330 Ark. 364, 955 S.W.2d 502. Instead, the State is asking us to assume the role of factfinder

and reevaluate the trial court's decision on an evidentiary matter. This we will not do.

■ In upholding the trial court's suppression order in *Stephenson*, 330 Ark. 594, 955 S.W.2d 518, this court stated that it would not engage in a search for error where any determination it made would not set precedent or serve as a guide in future prosecutions. Likewise, we decline to engage in a search for error in the present case. Ultimately, the trial court based its determination to suppress the evidence on the facts and circumstances surrounding this stop. This was a fact-intensive matter for the court to resolve after receiving the evidence and weighing the credibility of the witnesses. The trial court made no broad ruling that would impact future cases or have widespread ramifications on the law surrounding probable cause to make a vehicle stop. Therefore, our review of the suppression order is not required because the correct and uniform administration of the criminal law is not at issue. Accordingly, the State's appeal is dismissed.

GLAZE, IMBER, and SMITH, JJ., dissent.

TOM GLAZE, Justice, dissenting. In this appeal, we are called on to review a trial court's granting of a defendant's motion to suppress seized evidence under Ark. R. App. P. 3(a)(1) and Ark. R. Crim. P. 16.2. This court refuses to do so even though it just made such a review in the strikingly similar case of *State v. Sullivan*, 340 Ark. 315, 11 S.W.3d 526 (2000) (supplemental opinion denying rehearing 340 Ark. 318-A (2000). Like *Sullivan*, this is the very type of case this court has previously reviewed under Rule 3(a)(1) to insure the correct and uniform administration of the criminal law. This court is wrong in not doing so now. While the majority opinion fails to see the similarities between this appeal and the ones in *Sullivan*, the reader may make his or her own comparison from the following summary of facts in the two cases:

### Sullivan Case

Officer stopped Sullivan after observing his speeding five miles per hour over the speed limit. Officer asked for Sullivan's vehicle registration and proof of insurance, which he could not produce. The officer discovered Sullivan's speedometer did not work and his car windows were illegally tinted. The officer became aware of

Sullivan's identity as someone who was known to the narcotics section after he stopped Sullivan. The officer also saw a hatchet in the car in plain view. The officer searched Sullivan's car incident to arrest and as an inventory search.

Sullivan moved to suppress, which the trial court granted, ruling the officer's stop was proper, but that the officer unlawfully arrested Sullivan, rather than giving him a citation. The State filed an interlocutory appeal under Ark. R. App. P.—Crim. 3(a)(1), which the attorney general stated required a review of a grant of a motion under Ark. R. Crim. P. 16.2 to suppress seized evidence.

### Guthrie Case

Officer believed Guthrie was an impaired driver when he pulled on Highway 62. He observed Guthrie crossing over center line and saw Guthrie driving about eighteen miles per hour in a thirty-five mile per hour zone. Officer stopped Guthrie after seeing his drivers' side tire go off the pavement. Officer claimed he did not know Guthrie until Guthrie stopped, and the officer knew Guthrie was a convicted felon, who acknowledged he had a gun in his truck. Officer found methamphetamine on Guthrie when he patted him down. Officers subsequently found additional methamphetamine, twenty-one grams of marijuana, drug paraphernalia, and $3,332.52 in cash.

Guthrie moved to suppress, which the trial court granted, ruling there was no reasonable ground for the stop. State filed interlocutory appeal under Ark. R. App. P.—Crim. 3(a)(1), because, like in *State v. Sullivan*, 340 Ark. 315, 11 S.W.3d 526, the appeal involved the constitutional safeguards applicable to traffic stops and the misinterpretation and misapplication of Ark. R. Crim. P. 16.2, under which the trial court improperly granted Guthrie's motion to suppress. The attorney general asserted this issue insured the correct and uniform administration of the criminal law in Arkansas.

As is readily seen from the above, the respective trial courts in *Sullivan* and *Guthrie* suppressed seized evidence following a traffic stop of the defendants' vehicles. The one meaningful distinction is that the *Sullivan* suppression motion was granted upon a "pretextual arrest" ground, and the *Guthrie* motion was granted based on an

unreasonable stop. In both cases, the State contended that the search and seizure of the contraband found in each defendant's vehicle was proper under *Whren v. United States*, 517 U.S. 806 (1996). In sum, the State argues that, an officer may validly stop and detain a motorist where the officer has probable cause to believe a traffic violation had occurred. *See also Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). Thus, the State's argument goes, if a valid stop and arrest are made for violations of the law in an officer's presence, an inventory search or search incident to the arrest is valid as well. *Id.*, *see also Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997).

This court's decision denying a rehearing in *Sullivan* was a divided one, 4-3, and it is not at all clear how that decision will affect a traffic stop, arrest, and search when a trial judge premises his granting of a suppression motion on grounds other than a "pretextual arrest." This court, as it did in *Sullivan*, should make it clear how it intends to apply the holdings in *Whren*, *Burris*, and *Travis* to facts that are almost identical to those in *Sullivan*, but differ in that the suppression motions were granted based on different grounds— "pretextual arrest" in *Sullivan*, as opposed to an "unlawful stop" in *Guthrie*.

The present state of the law in these traffic stop-and-arrest situations is confusing, and this court should attempt to make its holdings clearer. In short, our court should decide whether the traffic stop and resulting arrest and search in *Guthrie* is valid under *Whren* when no pretextual arrest was involved like the trial court found in *Sullivan*. There is absolutely no reason not to address the issue and Rule 3(a)(1) is the means by which this court may do so. The development of the law involving Arkansas's traffic stop and search-and-seizure cases compel our review, and I would grant and decide the merits of the appeal.

IMBER and SMITH, JJ., join this dissent.