STATE of Arkansas *v.* Misty Renee PRUITT

CR 01-776                                        64 S.W.3d 255

Supreme Court of Arkansas
Opinion delivered January 10, 2002

356

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y
Gen., for appellant.

*Paul Petty*, for appellee.

DONALD L. CORBIN, Justice. This is an appeal by the State
of Arkansas from an order of the White County Circuit
Court granting Appellee Misty Renee Pruitt's motion to suppress.
For reversal, the State raises several allegations of error regarding the
trial court's finding that a search of Pruitt's vehicle was illegal, thus
suppressing evidence found during the search and a subsequent
statement made by Appellee. As is required by Ark. R. App. P.—
Crim. 3(c), the State alleges that error has been committed to the
prejudice of the State and that the correct and uniform administra-
tion of the criminal law requires review of this appeal. We disagree
and dismiss the appeal.

The record reflects that on the evening of December 8, 2000, a
gold 1999 Chrysler Sebring convertible pulled into a parking lot of
a convenience store at the intersection of Highways 367 and 385 in
Judsonia. Present in the parking lot were Kensett Police Officer
Terry Evans and White County Deputy Mike Rogers. The driver
of the Sebring, Christy Ireland, pulled up behind the officers and
flashed the car's headlights. Ireland and a rear-seat passenger, James
Ball, then got out of the car while arguing with one another. Pruitt,
seated in the front passenger seat initially remained in the vehicle.
Ireland reported to the officers that Ball had attempted to grab the
car's steering wheel while she was driving. Deputy Rogers took
Ball aside, while Officer Evans radioed Sergeant Robert Parsons Jr.,
of the Judsonia Police Department, for assistance.

According to Parsons, when he arrived on the scene, Pruitt
was still sitting in the vehicle, but then voluntarily exited the vehi-
cle. Evans inquired if there was any contraband in the car, and the
women replied, "No." Parsons then asked the women if they had
used methamphetamine, and they admitted to having used it within
the last twenty-four hours. Thereafter, Parsons requested consent to
search the vehicle from Ireland. Even though both officers admitted
that they did not know who owned the vehicle, at no point prior to
the search did either officer inquire as to who owned it. Instead,
Parsons simply presented Ireland with a consent to search form, and
she signed it. Evans and Parsons both testified that Pruitt was

present when they requested the consent, but that she never indicated that she was the owner of the car, nor objected to the search.

During the search, Evans discovered a black purse on the front passenger floorboard. Without asking who owned the purse, Evans opened it and found two white rocks in a plastic bag and a second plastic bag with a powder residue on it. The rocks were identified as methamphetamine. Parsons discovered a Wal-Mart sack that contained a light bulb with a coke bottle cap attached to it and a glass tube stuck down through the cap. Inside the bulb was a burned white rock, also methamphetamine. He also discovered a Bearcat scanner in the rear of the car. Parsons admitted that neither he nor Evans looked at the vehicle's registration papers that were located in the car's glove box until the end of the search, after the drugs had already been discovered.

Pruitt was placed under arrest and transported to the police department in Judsonia. After being advised of her *Miranda* rights, Pruitt provided a written statement admitting that Ball had given her the methamphetamine in exchange for her driving him to Bald Knob. Parsons then conducted a taped interview with Pruitt who confirmed her written version of events. During this interview, Parsons also apologized to Pruitt for failing to ask for her consent to search the vehicle. Pruitt was charged with possession of a Schedule II controlled substance, namely methamphetamine, with intent to deliver, and use of a communication facility.

She subsequently filed a motion to suppress the evidence seized as a result of the search of her car, on the basis that the officers did not obtain a valid consent to search. Pruitt also requested that her subsequent confession be suppressed as the fruit of an illegal search. The State filed no response to the suppression motion, and the circuit court held a hearing on the motion on April 4, 2001. Neither side made any opening statements. Evans, Rogers, and Parsons each testified, as well as Pruitt. At the conclusion of the hearing, the trial court indicated that closing statements were unnecessary and then proceeded to rule from the bench, granting Pruitt's motion to suppress the evidence and her statement.

The State then requested permission to file a motion for reconsideration and supporting brief. The court granted this request, and the State filed its motion on April 11, 2001. In its motion for reconsideration, the State argued that Ireland, as the driver of the vehicle, had apparent authority to grant consent to the search, particularly in light of the fact that Pruitt stood silently by and failed

to object to the search. The State averred that the officers' reliance on this authority was reasonable and held in good faith, thus rendering the consent valid. The State argued in the alternative that any violation of Pruitt's constitutional rights was minimal, and Pruitt failed to demonstrate that her Fourth Amendment rights were violated.

After considering the State's motion and Pruitt's response, the trial court entered a written order affirming its original grant of Pruitt's motion to suppress. Specifically, the trial court stated:

> Arkansas Rules of Criminal Procedure 11.2(b) provides that the registered owner or a person in apparent control of a vehicle may grant consent to search the vehicle. While many times the apparent control of the vehicle is in the hands of its driver, that is not always the case. In the case at hand, Officer Parsons obtained a consent to search from Christie [sic] Ireland, a person whom he never observed operate or control the vehicle. While one can assume that Officer Evans told Officer Parsons that Ms. Ireland had driven the vehicle earlier, when Officer Parsons arrived at the scene, the defendant, Misty Renee Pruitt, was the only person inside the vehicle. In the Court's opinion Officer Parsons did not in good faith act reasonably when he did not bother to ask any of the three persons at the scene who was the owner of the vehicle in question. When Officer Parsons attempted to obtain a valid consent to search, it was necessary for him to simply ask who was the owner of the vehicle and if that person were available to obtain a consent from such owner.

The trial court also ruled that Evans did not act in good faith when he searched the purse found on the passenger's side of the vehicle, particularly when he knew Pruitt had been seated on that side of the car. Finally, the trial court found that the language of the written consent signed by Ireland did not extend to a search of a closed container. From that order, comes the instant appeal.

■■ The threshold issue in the instant matter is whether the State has properly brought this appeal pursuant to Rule 3(c). Pruitt contends that this is not an appealable matter because it does not involve the correct and uniform administration of the law. It is well settled that there is a significant difference between appeals brought by criminal defendants and those brought on behalf of the State. The former is a matter of right, whereas the latter is neither a matter of right, nor derived from the Constitution, but rather is

only granted pursuant to the confines of Rule 3. *See State v. McCormack*, 343 Ark. 285, 34 S.W.3d 735 (2000); *Bowden v. State*, 326 Ark. 266, 931 S.W.2d 104 (1996). The limited instances in which the State may bring appeals was set forth in *State v. Guthrie*, 341 Ark. 624, 19 S.W.3d 10 (2000). There, this court stated:

> We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. Rule 3(c). As a matter of practice, this court has only taken appeals "which are narrow in scope and involve the interpretation of law." *State v. Banks*, 322 Ark. 344, 345, 909 S.W.2d 634, 635 (1995). Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *State v. Harris*, 315 Ark. 595, 868 S.W.2d 488 (1994). Appeals are not allowed merely to demonstrate the fact that the trial court erred. *State v. Spear and Boyce*, 123 Ark. 449, 185 S.W. 788 (1916).

*Id.* at 628, 19 S.W.3d at 13 (quoting *State v. Stephenson*, 330 Ark. 594, 595, 955 S.W.2d 518, 519 (1997)). Stated differently, this court will only accept appeals by the State when our holding will establish a precedent that will be important to the correct and uniform administration of justice. *Stephenson*, 330 Ark. 594, 955 S.W.2d 518; *State v. Hart*, 329 Ark. 582, 952 S.W.2d 138 (1997); *State v. Rice*, 329 Ark. 219, 947 S.W.2d 3 (1997).

■ In determining the propriety of an appeal by the State, this court must determine whether the issue subject to appeal is one involving interpretation of a rule or statute, as opposed to one involving the application of a rule or statute. *Guthrie*, 341 Ark. 624, 19 S.W.3d 10. This court has consistently held that an appeal that raises the issue of application, rather than interpretation, of a statutory provision does not involve the correct and uniform administration of the criminal law. *McCormack*, 343 Ark. 285, 34 S.W.3d 735; *State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995). Moreover, where the resolution of the issue on appeal turns on the facts unique to that case, it cannot be said that the appeal is one requiring interpretation of our criminal rules with widespread ramifications. *See State v. Gray*, 330 Ark. 364, 955 S.W.2d 502, *supplemental opinion on denial of reh'g*, 330 Ark. 368-A, 958 S.W.2d 302 (1997); *Harris*, 315 Ark. 595, 868 S.W.2d 488.

■ ■ In the instant appeal, the State does not allege that the trial court misinterpreted the law; rather, the State argues that the

trial court erred in finding that the officers did not act reasonably in relying on Ireland's consent. A review of the trial court's order reflects that he properly considered the law regarding warrantless searches as set forth in Ark. R. Crim. P. 11.1 and 11.2. In order to make such a determination, the trial court was required to review the facts and circumstances surrounding the search of the vehicle and purse. It is well settled that this court will not accept an appeal by the State where the trial court has acted within its discretion after making an evidentiary decision based on the particular facts of the case or even a mixed question of law and fact. *McCormack*, 343 Ark. 285, 34 S.W.3d 735; *Guthrie*, 341 Ark. 624, 19 S.W.3d 10. The instant appeal is not one involving an erroneous interpretation of Rules 11.1 and 11.2; rather, the State's argument is premised on the notion that the trial court misapplied the provisions of these rules to the facts and circumstances in this case. In *Guthrie*, this court refused to take on the role of fact-finder or to engage in a search for error. We again refuse to do so in the instant matter.

■ Finally, we disagree with the State's assertion that the policy of ensuring the correct and uniform administration of justice requires us to consider this appeal, because Fourth Amendment search and seizure issues are frequently the subject of litigation. The State's theory ignores the fact that the validity of this search was a fact-intensive matter, and will have limited precedential effect. The facts present in this case are not facts commonly shared in other cases involving vehicle searches. Stated differently, a review of this appeal will not have widespread ramifications on the interpretation of our criminal law. Accordingly, the State's appeal of this issue does not fall within the confines of Rule 3, and is therefore not properly before us.

Appeal dismissed.

GLAZE, J., dissents.

IMBER, J., not participating.

TOM GLAZE, Justice, dissenting. Once again, this court side-steps review of a search and seizure case that specifically involves the interpretation and application of its rules, Rules 11.1 and 11.2 of the Rules of Criminal Procedure. Our Rule 3(c) of the Arkansas Rules of Appellate Procedure provides for an appeal by the State when the correct and uniform administration of the criminal rules requires review by this court. Here, not only are Rules 11.1 and 11.2 in issue here, but also in question is the purely

legal issue of "probable cause." *See Addison v. State*, 298 Ark. 1, 765 S.W.2d 566 (1989); *see also State v. Sullivan*, 340 Ark. 315, 11 S.W.2d 526 (2000) (where we granted review where appeal involved the constitutional safeguards applicable to traffic stops and the misinterpretation and misapplication of Ark. R. Crim. P. 16.2), *but see State v. Guthrie*, 341 Ark. 624, 16 S.W.3d 10 (2000) (where in a split decision, this court in a search and seizure case similar to *Sullivan*, refused the State a review under Ark. R. Crim. P. 3(c)). In my view, the majority court was wrong in *Guthrie*, and it is wrong here, as well.