STATE of Arkansas *v.* Namon HARRIS

CR 07-436          277 S.W.3d 568

Supreme Court of Arkansas
Opinion delivered February 28, 2008

*Dustin McDaniel*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellant.

*Miller Law Firm*, by: *Randel Miller*, for appellee.

J IM GUNTER, Justice. This appeal arises from an order of the Craighead County Circuit Court granting Appellee's motion to suppress evidence seized following a canine sniff of Appellee's truck. The State now brings this appeal. We reverse the circuit court's order and remand for further proceedings.

On May 2, 2006, Appellee Namon Harris was stopped by officers of the Jonesboro Police Department and officers of the Second Judicial Drug Task Force (DTF) on U.S. Highway 63. The officers were acting on a confidential informant's tip that Appellee was carrying cocaine and marijuana in his truck from Texarkana into Jonesboro. Officer Lane, a Jonesboro police officer and also a member of the DTF testified that he received the information at approximately 8:00 a.m. from an informant whom Lane knew, but who wished to remain anonymous. The informant described Appellee as a black male, approximately forty years of age, five foot, eight inches tall, and approximately 180 pounds. The informant described Appellee's vehicle as a tan-colored Chevrolet extended cab pickup truck with a yellow construction light. Lane testified that the informant also described some other possible vehicles that could be following Appellee. After receiving this information, Lane contacted the DTF officers and advised them of the informant's tip. After contacting these officers, Lane, along with Agent John Redman, got into an unmarked vehicle and began traveling on U.S. Highway 49 in the direction of Little Rock to try to intercept Appellee's vehicle. As they were traveling on Highway 49, Lane noticed a vehicle matching the description given to him by the informant. As Lane turned around and attempted to catch up with the vehicle, Redman ran the vehicle's license plate through Arkansas State Police headquarters. The vehicle was registered to Appellee. Lane then passed the vehicle to

see the driver of the vehicle and noticed that the driver matched the description given by the informant.

Lane contacted Jonesboro police officer Lieutenant Ancel Jines, who was in the area of Highway 49, and informed him of the information. Lane advised Jines that he had reasonable suspicion that the vehicle was carrying a large amount of a controlled substance, and requested that Jines conduct a traffic stop on the vehicle. Jines pulled out behind Appellant's vehicle and informed Lane that the vehicle's window tint appeared to be illegal. Jines then contacted K-9 Officer John Shipman and requested that Shipman conduct a stop on the vehicle.

Shipman stopped Appellee's vehicle on U.S. Highway 63, just east of U.S. Highway 49. Appellee provided Shipman with a Texas driver's license identifying himself as Namon Harris from Texarkana, Texas. Shipman handed the license and vehicle information to Jines to check Appellee through the ACIC/NCIC system. While Jines was checking the license, Shipman assisted his canine partner with a perimeter sniff of the exterior of the vehicle. Shipman testified that his canine gave a positive alert for the odor of illegal narcotics being present in the vehicle. Upon a search of the vehicle, the officers found a large trash bag in the rear seat that contained two large plastic containers that contained approximately sixty to seventy pounds of marijuana. Jines then placed Appellee under arrest for possession of a controlled substance with the intent to deliver. The officers continued the search of the vehicle and found a loaded .357 Smith & Wesson hand gun. The officers had the vehicle towed to the Craighead County Sheriff's Office to continue the search. While at the Sheriff's office, Agent John McGee located approximately 2.2 pounds of cocaine and a box of .357 hand-gun ammunition inside the driver's side rear door.

Appellee was charged with possession of cocaine with intent to deliver, a Class Y felony; possession of marijuana with intent to deliver, a Class B felony; and simultaneous possession of drugs and firearms, a Class Y felony. On August 2, 2006, Appellee filed a motion to suppress the evidence seized in the searches. Following a hearing, on March 8, 2007, the Craighead County Circuit Court filed its order granting Appellee's motion to suppress. The circuit court ruled that, although the police officers had reasonable suspicion to stop Appellee's vehicle for an investigatory stop, the sole purpose of stopping the vehicle was to conduct a canine sniff to develop a basis to search the vehicle. That same day, the State filed a notice of appeal, stating that the order granting Appellee's

motion to suppress substantially prejudices the prosecution of its case. The State now brings its appeal.

On appeal, the State argues that the circuit court erred as a matter of law by suppressing evidence discovered following a canine sniff of Appellee's truck. Specifically, the State asserts that the circuit court erred in its conclusion that, despite having reasonable suspicion to stop Appellee's truck, the canine sniff violated the Arkansas and United States Constitutions because the officers made the stop with the pretext of conducting a canine sniff and had developed no additional suspicion to support the search.

In response, Appellee argues that this case is not appealable by the State pursuant to Ark. R. App.–Crim 3. Specifically, Appellee contends that this appeal is not one requiring interpretation of the law, but rather it raises issues involving the application of the law to the facts of this case. Alternatively, Appellee argues that there was no traffic violation stop in this case. First, Appellee contends that the Jonesboro Police Department had no authority to patrol the limited access Highway 63 for a routine traffic violation.[1] Second, he argues that the facts in this case are insufficient to justify a Rule 3.1 stop.

We review orders to suppress evidence *de novo* based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *State v. Harmon*, 353 Ark. 568, 113 S.W.3d 75 (2003).

### Ark. R. App.–Crim. 3

We will first address whether the State is authorized to bring an appeal in this case pursuant to Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal (2007). Rule 3(a)(1) states that an interlocutory appeal on behalf of the State may be taken from a pretrial order in a felony prosecution which grants a motion under Ark. R. Crim P. 16.2 (2007) to suppress seized evidence. Rule 3(c) provides that when a notice of appeal is filed pursuant to subsection (a), the State is authorized to appeal a criminal case when the

---

[1] Even though Appellee raised this argument below, he failed to obtain a ruling on the issue. Accordingly, it is not preserved for our review. *See Rodriguez v. State*, 372 Ark. 335, 276 S.W.3d 208 (2008).

Attorney General, after inspecting the record, is satisfied that the circuit court committed error prejudicial to the State, and that review by this court is necessary to ensure the correct and uniform administration of justice. *Id. See also Harmon, supra.* Our case law clearly sets out the circumstances under which we will consider an appeal by the State:

> This court's review of the State's appeals is not limited to cases that would establish precedent. As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of the law. Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. Appeals are not allowed merely to demonstrate the fact that the trial court erred. Where the resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State.

*Barritt v. State*, 372 Ark. 395, 277 S.W.3d 211 (2008) (citing *State v. Brooks*, 360 Ark. 499, 504, 202 S.W.3d 508, 512 (2005)).

Here, the State contends that the issues involve legal questions rather than factual questions, thereby giving us jurisdiction to hear this appeal. We agree. The outcome of this appeal requires the interpretation of our criminal case law regarding canine sniffs. The issue here is not whether the circuit court applied the law incorrectly to this particular set of facts, but whether the circuit court misinterpreted the law and then applied a flawed interpretation of the law to suppress the seized drugs in this case. *See Harmon, supra.* Further, Appellee admits in his brief that "[t]his case provides this Court with an opportunity to address the issues of when a dog sniff is justified and the legal basis necessary to support such a search." Appellee also states that "[t]his Court should clarify the issues as now raised under Arkansas law." Because the holding in this case presents an issue of interpretation with widespread ramifications and will be important to the correct and uniform administration of the criminal law, we accept the State's appeal.

### Ark. R. Crim P. 3.1

We will now address whether the facts of this case are sufficient to justify a Rule 3.1 stop and detention. Rule 3.1 of the Arkansas Rules of Criminal Procedure (2007) provides:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

*Id. See also Dowty v. State*, 363 Ark. 1, 210 S.W.3d 850 (2005). "Reasonable suspicion" is defined as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." *Dowty,* 363 Ark. at 11, 210 S.W.3d at 856 (citing Ark. R. Crim. P. 2.1 (2004)). Whether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person may be involved in criminal activity." *Id.* at 11, 21 S.W.3d at 856-57 (citing *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001)).

In addition, the Arkansas legislature has codified factors to be considered when determining whether an officer has grounds to "reasonably suspect" a person is subject to detention pursuant to Rule 3.1. These factors include, but are not limited to, the following:

(1) The demeanor of the suspect;

(2) The gait and manner of the suspect;

(3) Any knowledge the officer may have of the suspect's background or character;

(4) Whether the suspect is carrying anything, and what he or she is carrying;

(5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors;

(6) The time of the day or night the suspect is observed;

(7) Any overheard conversation of the suspect;

(8) The particular streets and areas involved;

(9) Any information received from third persons, whether they are known or unknown;

(10) Whether the suspect is consorting with others whose conduct is reasonably suspect;

(11) The suspect's proximity to known criminal conduct;

(12) The incidence of crime in the immediate neighborhood;

(13) The suspect's apparent effort to conceal an article; and

(14) The apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer.

Ark. Code Ann. § 16-81-203 (2005).

Appellee asserts that the facts in this case are insufficient to justify the stop because the information that was used came from an anonymous individual. The above factors include "any information received from third persons, whether they are known or unknown." In *Kilpatrick v. State*, 322 Ark. 728, 912 S.W.2d 917 (1995), a confidential informant told a detective that two males driving a black 1989 Ford Ranger pickup with Oklahoma tags were selling crack cocaine and told the detective where the vehicle was parked. We said that while there was minimal evidence to show the reliability of the informant in that case, the detective had been able, in the past, to confirm the veracity of some of the information provided and was aware that the informant had worked with other detectives on cocaine cases. We held that this evidence of reliability, combined with the accuracy of the informant's information and the detective's testimony regarding the area's reputation for drug traffic, was enough to give the officers "specific, particularized and articulable reasons indicating the person or vehicle may be involved in criminal activity." *Id.* at 735, 912 S.W.2d at 921 (citing *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284 (1982)). We further held that the information provided by the

informant was sufficiently detailed that, when combined with all other factors, it gave the officers a legal basis for the stop. *Id.*

■ Here, Officer Lane testified that he knew the informant; therefore, the tip was not anonymous. Lane testified that he first had contact with the informant in 2002, and found the information he had received at that time had been accurate and truthful. Further, the information given to Lane by the informant in the instant case matched the descriptions of Appellee and his vehicle. Therefore, the evidence of the informant's reliability combined with the accuracy of the informant's information was enough to give the officers "specific, particularized and articulable reasons indicating the person or vehicle may be involved in criminal activity." *See Kilpatrick, supra.* In reviewing the totality of the circumstances, we hold that the officers had reasonable suspicion, and therefore a legal basis, to stop Appellee's vehicle.[2]

*Canine sniff*

The State argues that the court erred in concluding that the canine sniff of Appellee's truck violated the Arkansas and United States Constitutions because the officer had stopped the Appellee with the pretext of conducting a canine sniff and had developed no additional suspicion to support it. In response, Appellee asserts that, even if the officers had reasonable suspicion to justify a Rule 3.1 stop, the officers did not have any information that would justify a canine sniff.

A pretextual stop does not violate federal constitutional law. *See Harmon, supra.* Further, this court has never held a valid traffic stop to be unconstitutional because of a police officer's ulterior motives. *See Harmon, supra* (citing *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994)). We have also said that an otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity. *Id.* Unlike pretextual arrests, our common-law jurisprudence does not support invalidation of a search because a valid traffic stop was made by a police officer who suspected other criminal activity. *Id.*

---

[2] Because we hold that there was a valid stop and detention pursuant to Rule 3.1, we will not address whether there was a valid traffic violation stop regarding Appellee's window tint.

The use of a drug dog during a traffic stop does not constitute an illegal search under the federal constitution. *Burks v. State*, 362 Ark. 558, 210 S.W.3d 62 (2005) (citing *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834 (2005)). We have held that a canine sniff of the exterior of a vehicle is not a Fourth Amendment search. *See Dowty, supra* (citing *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004)). Where there is no "search" within the meaning of the Fourth Amendment, no reasonable suspicion is necessary to justify having a dog smell appellant's vehicle. *Id.* According to our case law, if police have a reasonable suspicion to detain a vehicle, no separate suspicion is required to conduct a canine sniff. *See Burks, supra* (declining to address whether a canine sniff is an illegal search under the state constitution because law enforcement had reasonable grounds to detain).

Appellee argues that we should find that a canine sniff constitutes a search under Article 2, § 15 of the Arkansas Constitution because our Constitution provides greater rights of privacy and greater protection than that afforded under the Federal Constitution. We have made it abundantly clear that though the search-and-seizure language of Article 2, § 15, of the Arkansas Constitution is very similar to the words of the Fourth Amendment, we are not bound by the federal interpretation of the Fourth Amendment when interpreting our own law. *See State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004); *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002); *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002); *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002). We have deviated from federal precedent by embracing a heightened privacy protection for citizens in their homes against unreasonable searches and seizures. *See State v. Brown, supra.* However, where the search of a motor vehicle is concerned, we have said that it is appropriate to follow Fourth Amendment interpretations because of the difficulty in balancing interests and setting rules for search and seizure of automobiles. *See Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995). Here, the argument asking us to declare that a canine sniff constitutes a search under Article 2, § 15 of the Arkansas Constitution has not been sufficiently developed. Therefore, we decline to address this issue.

Because the officers in this case had reasonable suspicion to stop and detain Appellee's vehicle pursuant to Rule 3.1, we hold that any pretext on the part of the officers is irrelevant, and that the officers did not need any additional reasonable suspicion to

justify the canine sniff. Accordingly, we hold that the circuit court erred in suppressing the evidence, and we reverse and remand for further proceedings.

Reversed and remanded.