SLIP OPINION

Cite as 2015 Ark. 203

# SUPREME COURT OF ARKANSAS

No. CR–14–872

| | | |
|---|---|---|
| STATE OF ARKANSAS | | **Opinion Delivered** May 14, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE SEARCY COUNTY CIRCUIT COURT [NO. CR–2013-64] |
| MARK E. PAYTON | | HONORABLE CHARLES E. |
| | APPELLEE | CLAWSON, JR., JUDGE |
| | | <u>APPEAL DISMISSED</u>. |

**PAUL E. DANIELSON, Associate Justice**

Appellant State of Arkansas appeals from the order of the Searcy County Circuit Court granting a motion to suppress by appellee Mark E. Payton. The State's sole contention on appeal is that the circuit court erred in granting the motion on the basis that Payton's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), were violated. We dismiss the appeal.

Payton was charged with sexual assault in the fourth degree and moved to suppress a statement that he had given, asserting that he had not been advised of his *Miranda* rights prior to being interviewed.[1] At the hearing on Payton's suppression motion, Todd Shaw, a sergeant of the Arkansas State Police, testified for the State.

---

[1]Payton additionally argued that his statement had been obtained by coercion and intimidation and was not voluntarily made.

SLIP OPINION

Sergeant Shaw testified that, on September 21, 2013, he responded to a request for assistance from the Searcy County Sheriff's Office regarding a possible overdose by a minor female fourteen years of age. After arriving at the hospital in Harrison, Arkansas, where the minor was receiving treatment, Sergeant Shaw made contact with the mother of the minor, who was at the hospital, as was Payton, who was twenty-one years old. Shaw testified that in the course of his investigation, he decided to interview Payton about what had happened; he later explained that the minor's mother had identified Payton to him and that he had also been informed that Payton had been in the minor's company the evening before. He further testified that prior to interviewing Payton, the investigation had turned into a "sexual investigation."

Shaw testified that he approached Payton, identified himself and said something to the effect of, "I need to speak to you for a little bit"; they then went to his unmarked police car, which was parked in the hospital lot.[2] According to Shaw, he had informed Payton that Payton was under no obligation to speak with him; yet, Payton spoke with him nonetheless. Shaw testified that they spoke inside his vehicle, which was unlocked and had the windows partially rolled down, and that their conversation lasted just slightly longer than one hour.

Shaw stated that Payton neither attempted to leave nor indicated that he needed to, but had he tried, Shaw would have permitted him to do so. Shaw denied ever telling Payton

---

[2]Shaw testified that, prior to his approaching Payton to speak with him, Payton had actually approached him upon his arrival at the hospital. Shaw said that at that time he told Payton he "would have to get with him in a little bit."

that he was in custody or that he had an obligation to speak with him, nor did Shaw arrest him at the conclusion of the interview. He did, however, admit that Payton was possibly a suspect or a person of interest at the time of the interview. Shaw further testified that, while he did not Mirandize Payton because "he was not under arrest," he did, at some point later in the interview, ask Payton to sign a consent form to obtain a DNA sample from him, to which Payton agreed. He further acknowledged that some forty-five minutes into the interview, Payton asked him if he was recording the interview, which Shaw was, and that Payton commented that he had thought the conversation was between just the two of them. At the conclusion of Shaw's testimony, the circuit court took the motion under advisement.

On June 11, 2014, the circuit court filed a letter opinion granting Payton's motion to suppress. In it, the circuit court concluded that "the State Police Investigator had sufficient information to believe that the defendant may have been involved or had knowledge of the drug overdose or the sexual activity [so as] . . . to say that the line between investigation and accusation had been crossed."

In a motion for reconsideration of the circuit court's decision, the State asserted that whether Payton could be considered a suspect had no bearing on whether *Miranda* applied. It contended that the appropriate inquiry was whether Payton was in custody at the time of the interview, and the State asked that the court reconsider its ruling in light of that inquiry and requested a ruling from the court "stating: (1) whether custody is a requirement of *Miranda* and (2) if the Defendant was in custody at the time of his interview with Special

Agent Shaw." Payton responded that any further specificity concerning the circuit court's decision was unnecessary.

The circuit court subsequently entered an order on August 5, 2014, finding as follows:

1.      There is a separation between the investigatory examination and the accusatory examination, and once the examination has developed into an accusatory examination a Defendant must be apprised of his or her rights before any statement can be elicited.

2.      Based upon the testimony, it is reasonably clear that when Investigator Todd Shaw of the Arkansas State Police arrived at the hospital he knew the following factors:

    a.      A fourteen (14) year old female victim had overdosed and had been admitted to the hospital.

    b.      There was evidence of recent sexual activity with the victim.

    c.      That her mother had delivered the fourteen (14) year old victim to a house in Marshall, Arkansas.

    d.      The victim had been picked up by Defendant, Mark Payton.

    e.      That a sexual assessment kit had been ordered for the victim.

3.      Investigator Todd Shaw of the Arkansas State Police had sufficient information to reasonably believe Defendant had been involved or may have had knowledge of the drug overdose of the victim and/or sexual activity with the victim.

4.      Investigator Todd Shaw of the Arkansas State Police had possession of sufficient information to understand and determine the line between investigation and accusation had been crossed, and the Court rejects the State's theory that Investigator Todd Shaw just wanted to talk to Defendant.

5.      Defendant was released by Investigator Todd Shaw of the Arkansas State Police without being arrested, however, by that time a constitutional violation had occurred with Defendant having not been apprised of his constitutionally protected rights.

6.      Based upon the foregoing, Defendant's Motion to Suppress Statements made by Defendant to Investigator Todd Shaw of the Arkansas State Police be, and hereby is granted.

The State now brings this interlocutory appeal from the circuit court's order.

As an initial matter, this court must consider whether the instant State appeal is a proper one under Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal. Pursuant

to Rule 3, the State may take an interlocutory appeal "from a pretrial order in a felony prosecution which . . . grants a motion under Ark. R. Crim. P. 16.2 to suppress seized evidence." Ark. R. App. P.–Crim. 3(a)(1) (2014). As this court has frequently observed, there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. *See State v. Crane*, 2014 Ark. 443, 446 S.W.3d 182; *State v. Williams*, 2013 Ark. 164. The former is a matter of right, whereas the latter is not derived from the constitution, nor is it a matter of right, but is granted pursuant to Rule 3. *See State v. Myers*, 2012 Ark. 453. Under Rule 3, we accept appeals by the State when our holding would establish important precedent or would be important to the correct and uniform administration of the criminal law. *See id.* We only take appeals that are narrow in scope and involve the interpretation of the law. *See id.* Where the resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal law with widespread ramifications, and the matter is not appealable by the State. *See id.* Nor will this court permit a State appeal merely to demonstrate that the circuit court erred. *See State v. Jenkins*, 2011 Ark. 2. Finally, this court will not accept an appeal by the State where the circuit court has acted within its discretion after making an evidentiary decision based on the particular facts of the case or even a mixed question of law and fact, as those appeals do not require interpretation of our criminal rules with widespread ramifications. *See id.*

The State claims that the instant appeal involves "whether an individual must be advised of the procedural safeguards under *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966)

at the point in questioning when police consider an individual as a suspect even though she or he is not in custody." As we see it, however, the issue, more simply stated, is whether the protections of *Miranda* applied to the circumstances surrounding Payton's interview by Sergeant Shaw. This court has previously held that the issue of whether a person is in custody for purposes of *Miranda* is a mixed question of law and fact. *See Jenkins*, 2011 Ark. 2 (citing *Thompson v. Keohane*, 516 U.S. 99 (1995)). *See also State v. Wright*, 2014 Ark. 266, 436 S.W.3d 136 (holding that where the issues on appeal involved the application, not the interpretation, of laws regarding custodial interrogation, *Miranda* rights, and voluntary confessions, the matter turned on mixed questions of law and fact, and the correct and uniform administration of justice was not at issue); *State v. Guthrie*, 341 Ark. 624, 19 S.W.3d 10 (2000) (rejecting as an improper basis for the State's appeal under Rule 3 the State's argument that, based on the facts and circumstances of the case, the circuit court incorrectly applied the law).

In this State appeal, we would be called upon to determine whether the circuit court erroneously applied the law, *Miranda*, to the facts, which the State claims demonstrate that Payton was not in custody at the time of his interview. Because the necessary inquiry in this case involves a mixed question of law and fact, it is an appeal not requiring the interpretation of our criminal rules with widespread ramifications.[3] Accordingly, we dismiss the appeal.

---

[3]Contrary to the dissent's claims otherwise, the instant appeal by the State involves not an erroneous interpretation of *Miranda* by the circuit court in the first instance, but whether the circuit court erred in its application of *Miranda* to the facts before it. Because the issue of whether *Miranda* warnings were required necessarily turned on the facts involved, the instant

Appeal dismissed.

GOODSON and WOOD, JJ., dissent.

---

appeal is one quite clearly involving a mixed question of fact and law. But, in addition, this court has previously decided the very issue raised by the State, and, as already set forth, we will not accept a State appeal merely to show that the court erred. *See State v. Spencer*, 319 Ark. 454, 892 S.W.2d 484 (1995) (holding that the circuit court misinterpreted *Miranda* to require its safeguards whenever an investigation focuses on an individual as a suspect, yet curiously omitting any discussion of the propriety of the State's appeal). Indeed, our precedent in *Spencer* belies any notion that a decision of the State's appeal in this case would have widespread ramifications as the issue has already been settled. *See State v. Threadgill*, 2011 Ark. 91, 382 S.W.3d 657 (noting the distinction between a proper State appeal presenting an issue on which this court had not made a direct statement and one involving an issue not novel for this court or of first impression); *State v. Johnson*, 2010 Ark. 77, 360 S.W.3d 104 (accepting a State appeal involving an issue on which there were no Arkansas cases precisely on point). *But see State v. Dennis*, 318 Ark. 80, 883 S.W.2d 811 (1994) (permitting a State appeal notwithstanding precedent to foster uniform application *with respect to sentencing*); *State v. Williams*, 315 Ark. 464, 868 S.W.2d 461 (1994) (permitting appeal, despite precedent, to perpetuate uniformity in *sentencing*). To reiterate, the State's right to appeal is extremely limited, and its appeal will be accepted only when our holding will establish precedent important to the correct and uniform administration of justice. *See State v. Pruitt*, 347 Ark. 355, 64 S.W.3d 255 (2002). This is not such an appeal because we already have well–settled and controlling authority in this area of the law.

SLIP OPINION

**RHONDA K. WOOD, Justice, dissenting.** I respectfully dissent because I believe the majority has lost sight of the standard by which the court should evaluate interlocutory appeals from the State.

An appeal from the State is not a matter of right and is only granted in compliance with Rule 3 of the Arkansas Rules of Criminal Appellate Procedure. *State v. Guthrie*, 341 Ark. 624, 19 S.W.3d 10 (2000). Appeals under this Rule must concern the interpretation of law and must involve the correct and uniform administration of justice. *State v. S.G.*, 373 Ark. 364, 284 S.W.3d 62 (2008). The correct and uniform administration of justice is at issue when the question presented is solely a question of law independent of the facts in the case. *Id*. In this case, the State asks us to review a decision to suppress evidence in which the circuit court concluded that "once the examination has developed into an accusatory examination a Defendant must be apprised of his or her [*Miranda*] rights before any statement can be elicited." Because a defendant must be in custody before *Miranda* rights are required, the circuit court's holding is an error of law and one which involves the uniform administration of justice. This court should reverse and remand for the circuit court to consider whether to suppress the evidence according to the correct legal standard—that is to determine whether the defendant was subjected to a *custodial* interrogation. The proper standard to which police must adhere in determining whether *Miranda* rights are required is a legal question with widespread ramifications for the daily interaction of police officers with our citizens, i.e., it is exactly the type of issue to which Rule 3 was meant to apply.

I agree with the majority that we only take appeals that are narrow in scope and that involve the interpretation of the law. *Guthrie, supra.* I also agree that we should not review the circuit court's factual determinations or its application of the law to those facts *to the extent that the court's decision hinges on those facts*. But to dismiss an appeal out of hand because it may concern a mixed question of law and fact without any further analysis of whether the claimed error is factual or legal is, itself, an error. The majority dismisses this appeal because whether a person is in custody is a mixed question of law and fact. However, the State is not asking us to review the court's factual determination of whether Payton was in custody. In fact, the State could *not* ask us for such a review because the circuit court never analyzed or determined whether Payton was in custody at all. Instead, the State asks us a legal question: Must an individual be in custody before *Miranda* rights must be read or was the circuit court correct that accusatory questioning alone necessitates the requirements of *Miranda*?

To dismiss the State's appeal every time that a mixed question of law and fact may be tangentially at issue in the case would be to virtually abolish the State's ability to appeal entirely. Whether a photographic line-up is unconstitutionally suggestive is a mixed question of law and fact. *Cook v. State*, 283 Ark. 246, 675 S.W.2d 366 (1984). Whether the good-faith exception is applicable is a mixed question of law and fact. *State v. Hart*, 329 Ark. 582, 952 S.W.2d 138 (1997). Whether an individual has standing to challenge the validity of a search warrant is a mixed question of law and fact. *State v. Gray*, 330 Ark. 364, 955 S.W.2d 502 (1997). Whether exigent circumstances justify a warrantless entry into a home is a mixed question of law and fact. *State v. Nichols*, 364 Ark. 1, 216 S.W.3d

SLIP OPINION

114 (2005). It is hard to conceive of any pre-trial, criminal-procedure scenario that could give rise to a decision of whether to suppress evidence that does not in some way ultimately involve the application of law to the specific fact scenario. This does not prohibit us from determining whether the law was incorrect in a State appeal involving the "uniform administration of justice."

As the majority opinion correctly notes, whether a person is in custody is a mixed question of law and fact. *State v. Jenkins*, 2011 Ark. 2. But whether a person must be in custody before the requirements of *Miranda* are triggered is *not* a mixed question of law and fact; it is a pure question of law—one that has been answered quite definitively by both the Supreme Court of the United States and this court. *See Oregon v. Mathiason*, 429 U.S. 492 (1977) (holding that *Miranda* warnings are required only when a person's freedom has been restricted so as to render him "in custody"); *State v. Spencer*, 319 Ark. 454, 892 S.W.2d 484 (1995) (same).

The overarching issue for this court to consider in deciding if the State's appeal is appropriate is whether the circuit court misinterpreted the law or whether the circuit court misapplied the law to the facts. *See Guthrie*, 341 Ark. at 628, 19 S.W.3d at 13. An appeal concerning the application, rather than the interpretation, of the law does not involve the correct and uniform administration of the criminal law, and the appeal need not be allowed. *Id*. Thus, where the resolution of the issue on appeal turns on the facts unique to that case, it cannot be said that the appeal is one requiring interpretation of our criminal rules with widespread ramifications. *Id*.

In *Guthrie* we explained what it means for the resolution of an appeal to turn on the unique facts of the case. The issue in *Guthrie* was whether there were reasonable grounds to support a traffic stop. *Id.* The circuit court listened to testimony from the officer who conducted the stop, the defendant, and the defendant's granddaughter. Importantly, the testimony was contradictory and the officer's testimony was inconsistent in some respects. *Id.* at 626–28, 19 S.W.3d at 12–13. After hearing the testimony, the circuit court concluded that the officer did not have reasonable grounds to stop Guthrie. As we have done many times, we declined to usurp the circuit court's superior position to find the facts, explaining that "[t]his was a fact-intensive matter for the court to resolve after receiving the evidence and weighing the credibility of the witnesses." *Id.* at 630, 19 S.W.3d at 14.

A review of our precedent reveals the common-sense proposition that when the question on appeal is a factual one, we will dismiss, but when the question is a legal one, we are obligated to ensure that the criminal law is administered uniformly. That is, we must ensure that the *law applied* is the same regardless of the factual permutations present in an individual case. In *State v. Hart*, we dismissed an appeal concerning whether the good-faith exception to the exclusionary rule should apply because it "necessarily depended upon the [factual] assessment of whether Officer Brown acted in good faith . . . ." 329 Ark. at 584, 952 S.W.2d at 139. There was no debate present in the case about the legal requirements of the good-faith exception. Likewise in *State v. S.G.*, we dismissed an appeal because it concerned "whether the facts showed that S.G.'s grandmother was a 'custodian.'" 373 Ark. at 365, 284 S.W.3d at 63. There was no debate, however, about

the legal definition of a "custodian." *See id.* at 365, 284 S.W.3d at 63 n.2. In *State v. Nichols* we dismissed an appeal about whether exigent circumstances justified a warrantless search, explaining that the appeal "involve[ed] the trial court's consideration of the particular facts of the case and its determination that those facts did not justify the officer's warrantless entry into the defendant's home." 364 Ark. at 4–5, 216 S.W.3d at 117. The appeal was based upon the factual question of whether exigent circumstances existed, not the legal question of whether exigent circumstances can ever justify a warrantless search. The majority cites *State v. Jenkins* for the proposition that we will not take a State appeal simply to demonstrate that the court erred. 2011 Ark. 2. What the majority fails to point out was that the error alleged in *Jenkins* was one of fact, not of law. We dismissed the State's appeal in *Jenkins*, because the question on appeal was whether the circuit court erred *in determining that Jenkins was in custody* for purposes of *Miranda*. *Id.* at 3.

In the present case, as in *Jenkins*, I would agree with the majority and dismiss the appeal if the State had asked us to review the circuit court's determination of whether Payton was in custody when he spoke with Officer Shaw. Instead, the State asks us to review whether the circuit court erred by determining that *Miranda* applied based solely on the accusatory nature of the questioning directed at Payton without the court further finding that Payton was in custody, as our precedent has established is the test. We are not asked to determine whether the circuit court misapplied the *correct* law to the facts; rather, we are asked to determine if the circuit court misinterpreted the law and applied that flawed interpretation of the law to suppress Payton's statements.

SLIP OPINION

We have accepted appeals when "[t]he issue . . . is not whether the circuit court applied the law incorrectly to [a] particular set of facts, but whether the circuit court misinterpreted the law and then applied a flawed interpretation of the law to suppress [evidence]." *State v. Harris*, 372 Ark. 492, 496, 277 S.W.3d 568, 573 (2008). The majority turns this standard on its head by dismissing the appeal because "we would be called upon to determine whether the circuit court applied an erroneous interpretation of the law, *Miranda*, to the facts . . . ." That is *exactly* when we accept these appeals, at least according to our precedent. The legal standard of when the State must give *Miranda* warnings must be applied uniformly in our justice system, and even the majority states that "[w]e accept appeals by the State when our holding would establish important precedent or would be important to the uniform administration of justice."

In *State v. Harmon*, we accepted the State's appeal because the issue was a legal question of whether a pretextual traffic stop invalidated a subsequent search. 353 Ark. 568, 113 S.W.3d 75 (2003). The circuit court simply applied the wrong legal standard by deciding that a pretextual traffic stop was illegal. We explained that pretextual stops were allowed under both the U.S. Supreme Court's jurisprudence and our own. *Id.* at 574–575, 113 S.W.3d at 78–79. Notably, and in contradiction to today's majority, we also explained that the State's argument was "that the court interpreted the law wrongly, and then applied that flawed interpretation of the law to suppress the seized drugs." *Id.* at 572, 113 S.W.3d at 77. The outcome was the same in *State v. Crane*, where the circuit court misinterpreted the contours of the automobile exception to the warrant requirement. 2014 Ark. 443, 446 S.W.3d 182. Again, applying the opposite standard of the one

articulated by the court today, in *Crane*, we explained that the State's appeal was proper because it presented an issue of whether the circuit court's ruling rested upon an incorrect interpretation of the automobile exception applied to the facts of the case. *See id.* at 6, 446 S.W.3d at 185. The circuit court had ruled that evidence obtained from a safe found within the defendant's van should be suppressed because there were no exigent circumstances to justify a warrantless search of the safe. *Id.* We reversed because—as a matter of law—there is no separate exigency requirement to the automobile exception. *Id.* at 7–8, 446 S.W.3d at 185–86.

Similar to the *Harmon* case, in *Harris*, *supra*, we accepted an appeal of a case in which the circuit court determined that a pretextual stop in order to conduct a canine sniff required suppression of evidence. The circuit court had determined that the police were required to have additional suspicion in order to justify the canine sniff even though the initial stop was justified. 372 Ark. at 494–95, 277 S.W.3d at 571–72. We accepted the appeal and reversed because the circuit court committed a legal error. Namely, we reiterated that pretextual stops were constitutional, and canine sniffs were not searches that required reasonable suspicion within the meaning of the Fourth Amendment. *Id.* at 500–01, 277 S.W.3d at 576.

In *State v. Mancia-Sandoval*, once again this court accepted an appeal of virtually the same issue that was presented in both *Harmon* and *Harris*. 2010 Ark. 134, 361 S.W.3d 835. There, the circuit court suppressed evidence because it was the fruit of a pretextual traffic stop. Purporting to apply the same standard it does today, the court accepted the appeal and corrected the circuit court's legal error, explaining that to do so "will provide

SLIP OPINION

guidance to our law enforcement officers and our courts as to the law in our state when faced with similar circumstances in the future." *Id*. at 5, 361 S.W.3d at 838.

Returning to Payton's case, I fail to see how reversing the circuit court in *Mancia-Sandoval*, *Harmon*, and *Harris* to clarify that pretextual stops are constitutional is materially different from reversing the circuit court here to clarify that a defendant must be in custody before the law requires that the police apprise the defendant of his *Miranda* rights. Both are questions of law, both will dramatically affect the daily interactions of our citizens with their police force, and both satisfy the Rule 3 requirements for permissive State appeals. Accordingly, I must dissent from the decision to dismiss the State's appeal.

GOODSON, J., joins in this dissent.

*Dustin McDaniel*, Att'y Gen., by:  *Rebecca Kane*, Ass't Att'y Gen., for appellee.

*Phillip A. Moon*, for appellee.