2010 Ark. 228

**STATE of Arkansas, Appellant,**

v.

**K.B., A Minor, Appellee.**

No. 09–1018.

Supreme Court of Arkansas.

May 13, 2010.

Rehearing Denied June 24, 2010.

472

LeaAnn J. Irvin, Little Rock, for appellant.

William Robert Simpson Jr. and Thomas Kendrick, Little Rock, for appellee.

RONALD L. SHEFFIELD, Justice.

Appellee, K.B., was charged with rape, in violation of Ark.Code Ann. § 5–14–103(a)(3)(A) (Supp.2009), in the Pulaski County Circuit Court, Juvenile Division. K.B. was charged with raping C.G., a four-year-old relative of K.B., with a crayon. After continuing the adjudication hearing several times, the court found K.B. not delinquent and dismissed the case. The adjudication order was entered on June 23, 2009. The State of Arkansas now seeks a declaration of error of the juvenile court's interpretation of Rule 503 of the Arkansas Rules of Evidence. The State asserts that an error has been committed by the juvenile court which prejudiced the State, and this court's review is required for the correct and uniform administration of the law.

As an initial issue, this court must determine whether the State has properly brought this appeal. The State appeals pursuant to Ark. R.App. P.-Civ. 2(c)(1) (2009), which permits the State to appeal in delinquency cases only under those circumstances that would permit the State to appeal in criminal proceedings, and Ark. R.App. P.-Crim. 3(b) and (c) (2009), which authorize review when the Attorney General, after inspecting the trial record, is satisfied that error has been committed to the prejudice of the State and that the correct and uniform administration of the criminal law requires such review. We have long held that "there is a significant difference between appeals brought by criminal defendants and those brought on behalf of the State. The former is a matter of right, whereas the latter is neither a matter of right, nor derived from the Constitution, but rather is only granted pursuant to the confines of Rule 3." *State v. Pruitt,* 347 Ark. 355, 359–60, 64 S.W.3d 255, 258 (2002). Accordingly, the State's ability to bring such an appeal is limited, and we will only accept appeals "which are narrow in scope and involve the interpretation of law." *State v. Banks,* 322 Ark. 344, 345, 909 S.W.2d 634, 635 (1995). What is more, "[w]here an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. Appeals are not allowed merely to demonstrate the fact that the trial court erred." *State v. Stephenson,* 330 Ark. 594, 595, 955 S.W.2d 518, 519 (1997) (citations omitted). Accordingly, an

appeal that raises the issue of application, rather than interpretation, of a

statutory provision does not involve the correct and uniform administration of the criminal law. Moreover, where the resolution of the issue on appeal turns on the facts unique to that case, it cannot be said that the appeal is one requiring interpretation of our criminal rules with widespread ramifications.

*Pruitt*, 347 Ark. at 360, 64 S.W.3d at 258.

■ In this case, the State argues that the juvenile court erred in its interpretation of Ark. R. Evid. 503, and specifically in its holding that a minor victim and her mother can, by their testimony, waive the physician-patient privilege, pursuant to the exception outlined in Ark. R. Evid. 503(d)(3)(A), because they are parties to the criminal prosecution. As this issue requires us to interpret Rule 503, and not merely determine whether the rule was properly applied to the facts of this case, we hold that this is a proper matter for a State appeal.

We now turn to the merits of this case. The record reflects that the adjudication hearing commenced on June 9, 2009, and that the mother of C.G., the minor victim, testified to the following facts. Some time in late November 2008, K.B. and C.G., who are cousins, were alone together for less than an hour. A few weeks later, in December 2008, when C.G. complained of pain in her stomach, her mother took her to Dr. Karen Crowell, C.G.'s primary care physician. Upon examination, Dr. Crowell discovered that C.G. had a yeast infection and blood in her urine. Dr. Crowell prescribed antibiotics for both conditions. A few days later, as her mother was drying C.G. after a bath, C.G. thanked her mother for not hurting her as K.B. does. When her mother questioned her about the statement, C.G. told her, "[K.B.] stuck a crayon in me," and indicated that this had occurred when the two of them were alone together in November. C.G.'s mother explained that she examined C.G.'s vaginal opening and noticed that it was wider than usual.[1]

The hearing was continued to June 16, 2009. Dr. Crowell appeared and sought to quash a subpoena requesting her to produce the medical records for C.G. and to testify at the hearing. Dr. Crowell's attorney argued that neither C.G. nor her mother had authorized Dr. Crowell to release C.G.'s medical records, and therefore Dr. Crowell would be prohibited from doing so pursuant to the physician-patient confidentiality established by Rule 503 of the Arkansas Rules of Evidence.[2] In response, K.B.'s attorney argued that C.G.'s mother, as her guardian, had waived the privilege when she put C.G.'s physical condition, alleged injuries, statements to Dr. Crowell, and statements by Dr. Crowell in issue. K.B.'s attorney also maintained that the privilege only protects confidential communications between a doctor and patient, and not the type or date of treatment. According to K.B.'s attorney, communications that C.G.'s mother had testified about on direct examination were no longer confidential. K.B.'s attorney specifically pointed out that C.G.'s mother had testified about C.G.'s alleged injuries, and about the communications that had taken

---

1. C.G. also testified at this same hearing, and a video recording of statements she made to a detective about the incident was played. She was repeatedly asked whether K.B. had inserted a crayon into her vagina, whether she had told her mother this, and whether her statement to her mother was the truth. C.G.'s answers were conflicting.

2. Dr. Crowell also based her motion to quash on the Health Insurance Portability and Accountability Act (HIPAA). We will not address this basis, as it is not at issue before us now on the State's appeal.

place between her and Dr. Crowell when she took C.G. to see Dr. Crowell. Dr. Crowell's attorney responded that the litigation was being pursued by the State, not C.G. or her guardian, and therefore the exception outlined in Rule 503(d)(3)(A) did not apply. What is more, Dr. Crowell's attorney argued, the State, a party to the action, had not made any comments that would elicit a waiver of the privilege. Finally, K.B.'s attorney countered that Rule 503 applies equally in criminal as in civil cases, and it was the State that had elicited, in the first place, C.G.'s mother's testimony regarding the communications with Dr. Crowell. K.B.'s attorney asserted that the State could not hide behind the privilege when C.G.'s physical condition was an essential part of the State's case.

The juvenile court denied the motion to quash the subpoena of C.G.'s medical records. As an explanation for its holding, the court stated that Rule 503(d)(3)(A) provides an exception to the physician-patient privilege established by Rule 503. The court found that C.G. and her mother alleged that K.B. raped C.G. and filed charges against K.B. Therefore, they had a claim against K.B. Also, the court noted that C.G.'s mother put C.G.'s physical condition into issue when she testified about the insertion of the crayon and the width of C.G.'s vaginal opening.

Accordingly, Dr. Crowell testified at the hearing to the following facts. She examined C.G. on December 15, 2008. At that time, C.G. was complaining of abdominal pain, but not vaginal pain. Dr. Crowell diagnosed C.G. as having abdominal pain and hematuria, with a suspected urinary tract infection. She did not determine the cause of her urinary tract infection, though it could have been the result of poor hygiene, of which she had a history, or the result of insertion of a foreign object into the vaginal area. At that time, neither C.G. nor her mother told Dr. Crowell that she had been sexually assaulted, and Dr. Crowell did not do a vaginal examination. Dr. Crowell had no reason to suspect that C.G. had been sexually assaulted. At the appointment, C.G. was oriented and exhibited no signs of acute distress that would have indicated she had been sexually assaulted.

The court continued the adjudication hearing on June 23, 2009. The State renewed its motion to exclude the testimony of Dr. Crowell under Rule 503. In support of its position, the State cited *Johnson v. State*, 342 Ark. 186, 27 S.W.3d 405 (2000). In response, K.B.'s attorney argued that *Johnson* could be distinguished from the case at hand because, in *Johnson*, the privilege was asserted by a child witness who had done nothing to bring her emotional condition into issue. In the instant case, K.B.'s attorney pointed out, C.G.'s physical condition, the crux of the case, had been brought into issue by both C.G. and her mother. The State countered that C.G. was neither a claimant nor a party in this case, but a witness, and *Johnson* held that a witness is not a party and cannot assert a claim or defense that would trigger the application of the exception in Rule 503(d)(3)(A).

The juvenile court then granted the State's motion to exclude Dr. Crowell's testimony. The court stated that, in consideration of *Johnson*, it could not find that a victim or a witness could be considered a party. However, K.B.'s attorney then questioned the court as to how to reconcile this ruling with case law that held that a victim or a guardian could not put the victim's physical condition or statements to a doctor into evidence and then hide behind privilege. After reviewing the cases again, the juvenile court reversed the ruling it had just made, stated that it was reverting to its original ruling, and

denied the motion to exclude Dr. Crowell's testimony.

On appeal, the State maintains that the juvenile court erred in its interpretation of Rule 503, and specifically its finding that a victim was a party in a criminal prosecution for purposes of the exception to physician-patient privilege outlined in Rule 503(d)(3)(A). Rule 503 states in relevant part,

> (b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing his medical records or confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

> (c) Who May Claim the Privilege. The privilege may be claimed by the patient, his guardian or conservator, or the personal representative of a deceased patient. The person who was the physician or psychotherapist at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the patient.

> (d) Exceptions.

> . . . .

> (3) Condition an Element of Claim or Defense.

> (A) There is no privilege under this rule as to medical records or communications relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he or she relies upon the condition as an element of his or her claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his or her claim or defense.

Ark. R. Evid. 503 (2009). A "claim" is "the aggregate of operative facts giving rise to a right enforceable by a court," "the assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional," or "a demand for money, property, or a legal remedy to which one asserts a right." *Black's Law Dictionary* 264 (8th ed.2004).

By this definition, C.G. and her mother did not have a claim—that is, an enforceable legal right or remedy—that could be adjudicated by the proceedings. This determination is supported by our case law. In *Johnson v. State,* Ashley Heath, the child eyewitness to a capital murder, waived the psychologist-patient privilege, giving the defense access to her medical records. However, after the defendant's conviction was reversed, the child witness obtained a new psychologist and asserted the psychologist-patient privilege with regards to this doctor. The defendant moved for access to the witness's records with the new psychologist, but was denied. In upholding the juvenile court's ruling on this matter, this court stated,

> The appellant contends that this privilege was inapplicable pursuant to Rule 503(d)(3)(A) because Ashley's emotional condition was an element of her claim or defense. However, Rule 503(d)(3)(A) clearly anticipates that the privilege is inapplicable only as to a party to a proceeding who brings his or her own physical, mental, or emotional condition into issue. *See Cavin v. State,* 313 Ark. 238, 855 S.W.2d 285 (1993). Ashley was not and is not a party to the proceedings below, and therefore could not assert a claim or defense. If this Court were to follow appellant's reasoning, a third party could always circumvent Rule 503 by

calling into question any witness's mental or emotional condition. Such a result is clearly not intended by this rule, the purpose of which is to limit access to confidential communications. We therefore hold that because Ashley Heath was not a party to the proceedings and did nothing to bring her own emotional condition into issue, she properly asserted her psychotherapist/patient privilege.

*Johnson v. State*, 342 Ark. 186, 195, 27 S.W.3d 405, 411 (2000).

We acknowledge that the facts of *Johnson* differ from those of the case before us in that the privilege-holder in *Johnson* was a witness, while in this case the privilege holder is not only a witness, but also the victim of the crime. Nonetheless, we hold that a victim does not have a claim in a criminal prosecution. *See Burrow v. State*, 301 Ark. 222, 783 S.W.2d 52 (1990) (declining to find that the alleged rape victim was the "real party in interest," and not the State); *Clay v. State*, 236 Ark. 398, 366 S.W.2d 299 (1963) (observing that the State is the actual party in a criminal prosecution, not the victim). The juvenile court erred in its holding on this point.

Error declared.

HANNAH, C.J., and DANIELSON, J., concur.

HANNAH, C.J., concurring.

I concur with the majority that C.G. is not a party to this proceeding. However, *Johnson v. State*, 342 Ark. 186, 27 S.W.3d 405 (2000), is dispositive of this appeal. Under our holding in *Johnson*, a witness is not a party to a criminal prosecution and cannot assert a claim or a defense; therefore, his or her medical records or communications are not excluded from the physician-patient privilege by the exception in Arkansas Rule of Evidence 503(d)(3)(A).

C.G.'s status as a victim is irrelevant to the analysis of this case. Although she was the victim, her participation in this proceeding was as a witness, and *Johnson* holds that the exception of Rule 503(d)(3)(A) does not apply to witnesses.

I also write separately because of a concern at accepting a state's appeal where the adversarial process is not fully applied. The circuit court also ruled that K.B.'s due process rights precluded the State's attempt to exclude the evidence of communications about C.G. to her doctor. However, the circuit court did not find K.B. delinquent. Therefore, she did not appeal, and this issue is unaddressed. Nonetheless, I agree that under our precedent the circuit court erred in finding that the Rule 503(d)(3)(A) exception to the physician-patient privilege applied.

DANIELSON, J., joins.